JULIO GODINEZ *et al.*, Plaintiffs-Appellees, v. JUNE E. SULLIVAN-LACKEY, Defendant-Appellant (The City of Chicago Commission on Human Relations, Defendant-Appellant).

First District (5th Division)   No. 1—02—2101

Opinion filed August 20, 2004.

John Marshall Law School Fair Housing Legal Clinic, of Chicago (J. Damian Ortiz, of counsel), for appellants.

Douglas W. Graham and Fred M. Caplan, both of Chicago, for appellees.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Defendants, June E. Sullivan-Lackey and the City of Chicago Commission on Human Relations (the Commission), appeal from an order of the circuit court of Cook County reversing the determination of the Commission that the refusal of plaintiffs, Julio Godinez and Carlos Godinez, to rent an apartment to Sullivan-Lackey constituted discrimination in violation of the City of Chicago Fair Housing Ordinance (Chicago Municipal Code § 5—8—030 (2003)) (Fair Housing Ordinance). On appeal, defendants contend that: (1) section 8 rental assistance (42 U.S.C. 1437f (1988)) (hereinafter Section 8) is a "source of income" under the Fair Housing Ordinance; (2) the Commission's determination that plaintiffs discriminated against Sullivan-Lackey based on her source of income was not against the manifest weight of the evidence; and (3) the Commission properly awarded fees and costs to Sullivan-Lackey. For the following reasons, we reverse the judgment of the circuit court and reinstate the determination and order of the Commission.

BACKGROUND

The record reveals the following relevant facts. In April 1999, Sullivan-Lackey held a Section 8 rental assistance voucher, a form of monetary assistance created by Congress to aid low-income families in securing decent housing. Under the program, the United States Department of Housing and Urban Development (HUD) enters into an annual contributions contract with a public housing agency, which agrees to administer the program while HUD provides the necessary funds. The central requirements of the program are that: (1) the housing units meet set quality standards, as determined by the local housing authority based on an inspection of the unit prior to the lease and each year after that time; and (2) the amount of rent for units must be reasonable in comparisons with rents charged for comparable dwelling units in the private, unassisted local market.

As part of the program, Sullivan-Lackey's residence was inspected at the end of her lease to determine whether it met the standards required for compliance. The residence failed the inspection and Sullivan-Lackey was forced to move in order to keep her vouchers. If she was unable to secure a new residence before the expiration of her vouchers, then she would lose the rental assistance.

Sullivan-Lackey learned of a vacant apartment in the apartment complex where her daughter resided. This complex is owned by

plaintiff Julio Godinez and managed by his son, plaintiff Carlos Godinez. This apartment interested Sullivan-Lackey for several reasons, namely, it was on the first floor, which was important because Sullivan-Lackey suffered from numerous medical conditions that made climbing stairs difficult, and the apartment would allow her to baby-sit her grandchildren while her daughter was at work. Sullivan-Lackey, accompanied by her daughter, met with Carlos to view and apply for the apartment. Sullivan-Lackey filled out her rental application immediately after viewing the unit and made a payment of the $25 application fee, for which she received a receipt from Carlos.

Carlos reviewed her application and upon noticing that she was unemployed, asked how she intended to pay her rent. Sullivan-Lackey told him that she had a Section 8 voucher. Carlos stated that he did not accept Section 8 payments because he did not want to be audited. He told her that she could have the apartment if she paid $600 in cash each month for rent. Sullivan-Lackey did not agree to this and did not take the apartment. A couple days later, Sullivan-Lackey's daughter found a torn section of her mother's rental application on the normal route to dispose of trash.

Sullivan-Lackey was not able to find Section 8 housing before the expiration of her vouchers and she lost her benefits. Following Sullivan-Lackey's denial, two fair housing testers telephoned plaintiffs to inquire about apartments in plaintiffs' complex. Each asked about Section 8 vouchers and was informed that they did not accept Section 8 vouchers. Plaintiffs have never leased an apartment to a tenant who paid rent with Section 8 vouchers.

In August 1999, Sullivan-Lackey filed a complaint with the Commission alleging that plaintiffs violated the Fair Housing Ordinance by discriminating against her based on her source of income. A hearing officer appointed by the Commission conducted a hearing on the complaint and issued a first recommended decision. Plaintiffs objected to the decision, and the hearing officer issued a final recommended decision. In July 2001, after reviewing the evidence presented at the hearing, the Commission issued its final ruling, concluding that the facts demonstrated that plaintiffs violated the Fair Housing Ordinance by discriminating against Sullivan-Lackey. The Commission awarded damages totaling $5,610 to Sullivan-Lackey and levied a $250 fine against the plaintiffs. In October 2001, the Commission issued an additional ruling awarding attorney fees of $16,284 to Sullivan-Lackey.

In November 2001, plaintiffs filed a writ of *certiorari* in the circuit court to review the administrative findings of the Commission. In June 2002, the circuit court reversed the Commission's rulings, finding as follows:

"(1) the Chicago ordinances do not provide an explicit requirement that landlords seek Section 8 certification despite the City's having the power and authority to do so;

(2) pursuant to *Knapp v. Eagle*, 54 F.3d 1272, this court finds that Section 8 benefits are not a 'source of income' within the meaning of the Chicago anti-discrimination ordinance."

Defendants' timely appeal followed.

OPINION

Initially, defendants contend that the trial court erred in reversing the determination of the Commission that Section 8 rental assistance vouchers are considered a "source of income" under the Chicago Fair Housing Ordinance.

■ A reviewing court considers the administrative agency's decision and not that of the circuit court. *Sangirardi v. Village of Stickney*, 342 Ill. App. 3d 1, 10 (2003). The findings and conclusions of the administrative agency on questions of fact shall be held to be *prima facie* true and correct (735 ILCS 5/3—110 (West 2000)), and a court may not overturn an administrative decision unless the authority of the administrative body was exercised in an arbitrary or capricious manner or the decision is against the manifest weight of the evidence. *O'Neil v. Ryan*, 301 Ill. App. 3d 392, 400 (1998). A reviewing court does not reweigh the evidence or make an independent review of the facts, but rather its function is to ascertain whether the final decision of the administrative body is just and reasonable in light of the evidence presented. *Conklin v. Ryan*, 242 Ill. App. 3d 32, 37 (1993). If the record contains any evidence that fairly supports the agency's decision, such decision is not against the manifest weight of the evidence and must be sustained upon review. *Conklin*, 242 Ill. App. 3d at 37. However, questions of law are not entitled to the same deference and are reviewed *de novo*. *Sangirardi*, 342 Ill. App. 3d at 10.

Section 5—8—030 of the Chicago Municipal Code states, in relevant part:

"It shall be an unfair housing practice and unlawful for any owner, lessee, sublessee, assignee, managing agent, or other person, firm or corporation having the right to sell, rent, lease or sublease any housing accommodation, within the city of Chicago, or any agent of any of these, or any real estate broker licensed as such:

A. To make any distinction, discrimination or restriction against any person in the price, terms, conditions or privileges of any kind relating to the sale, rental, lease or occupancy of any real estate used for residential purposes in the city of Chicago or in the furnishing of any facilities or services in connection therewith, predicated upon the race, color, sex, gender identity, age, religion,

disability, national origin, ancestry, sexual orientation, marital status, parental status, military discharge status or source of income of the prospective or actual buyer or tenant thereof." Chicago Municipal Code § 5—8—030 (2003).

The Municipal Code defines "source of income" as "the lawful manner by which an individual supports himself and his or her dependents." Chicago Municipal Code § 5—8—040 (2003) (adopting section 2—160—020(m)).

At the Commission hearing, plaintiffs asserted that if a Section 8 voucher is held to constitute a source of income under the Fair Housing Ordinance, every landlord would be forced to involuntarily subject himself to the requirements of the Section 8 program whenever a prospective tenant wished to use Section 8 vouchers. In rejecting this argument, the Commission cited to its prior holdings "that a complainant can prove source of income discrimination by showing that they were denied a rental opportunity because they intended to make use of Section 8 funding." *Sullivan-Lackey v. Godinez*, CCHR No. 99—H—89, at 5 (July 18, 2001), citing *Smith v. Wilmette Real Estate & Management Co.*, CCHR Nos. 95—H—159 & 98—H—44/63 (April 13, 1999); *Smith v. Goodchild*, CCHR No. 98—H—177 (April 13, 1999); *Huff v. American Management & Rental Service*, CCHR No. 97—H—187 (January 20, 1999); *McGee v. Sims*, CCHR No. 94—H—131 (October 18, 1995).

The trial court disagreed with the Commission and reversed its determination holding that the Fair Housing Ordinance does not explicitly require Section 8 compliance by landlords. The trial court discounted the Commission's interpretation, even though "[c]ourts will defer to an agency's interpretation of the statute that it is charged to enforce." *Page v. City of Chicago*, 299 Ill. App. 3d 450, 463 (1998). The Commission maintains that "source of income" is ambiguous and its interpretation is consistent with the plain language of the Fair Housing Ordinance.

We find that the circuit court erred in reversing the holding of the Commission. The term "source of income" under the Fair Housing Ordinance refers only to the lawful manner in which one supports oneself and does not elaborate on what means are included within the lawful manner of support. Therefore, it is logical and reasonable to consider Section 8 vouchers part of the lawful manner for one's support. Our interpretation is consistent with the policy of the Fair Housing Ordinance. See Chicago Municipal Code § 5—8—010 (2003) ("the policy of the city of Chicago [is] to assure [a] full and equal opportunity to all residents of the city to obtain fair and adequate housing for themselves *** without discrimination against them because of their *** source of income").

Moreover, the Commission has gone beyond this finding to distinguish between landlords who object to Section 8 tenants and landlords who object to the burdens of Section 8 compliance. In doing so, the Commission created a test for the landlord to show that complying with the Section 8 program will impose more than a *de minimis* burden on him. Such a construction will avoid discrimination complaints when the landlord is objecting to a financial burden, rather than the tenant's source of income. In this case, plaintiffs did not challenge the Commission's finding that they failed to establish that accepting Sullivan-Lackey as a Section 8 tenant would subject them to a substantial financial burden.

The trial court also relied exclusively on the Seventh Circuit case, *Knapp v. Eagle Property Management Corp.*, 54 F.3d 1272 (7th Cir. 1995). In *Knapp*, the Seventh Circuit interpreted the Wisconsin Open Housing Act (Wis. Stat. § 101.22(6) (1994)) and found that Section 8 vouchers do not fall under the "lawful source of income" as provided in the statute. *Knapp*, 54 F.3d at 1282. However, the Wisconsin statute is not as broad in its definition as the Fair Housing Ordinance. The Wisconsin statute defined "lawful source of income" as "includ[ing] but ... not limited to lawful compensation or lawful remuneration in exchange for goods or services provided, profit from financial investments, any negotiable draft, coupon, or voucher representing monetary value such as food stamps, social security, public assistance or unemployment compensation benefits." *Knapp*, 54 F.3d at 1282, quoting Wis. Adm. Code § 89.01(8) (1994). The *Knapp* court acknowledged that Section 8 assistance "could arguably be included within the Wisconsin Act," but "decline[d] to ascribe such an intent to the [Wisconsin] legislature" because of potential problems in application. *Knapp*, 54 F.3d at 1282. In the present case, the Fair Housing Ordinance definition remains open as to the lawful manner of support.

In addition, in *Knapp*, the Seventh Circuit did not consider an interpretation of the term "lawful source of income" by any Wisconsin court or administrative agency charged with enforcing the statute. By contrast, the Commission has been consistently interpreting "source of income" to include Section 8 vouchers since 1995. We note that the Seventh Circuit's construction of Wisconsin law is not binding on this court. See *Sundance Homes, Inc. v. County of Du Page*, 195 Ill. 2d 257, 276 (2001).

Finally, the *Knapp* decision has been distinguished by state courts in Connecticut and New Jersey. See *Comm'n on Human Rights & Opportunities v. Sullivan Associates*, 250 Conn. 763, 739 A.2d 238 (1999); *Franklin Tower One, L.L.C. v. N.M.*, 157 N.J. 602, 725 A.2d 1104

(1999). In *Sullivan Associates*, the Connecticut Supreme Court declined to follow *Knapp*'s implication in *dicta* that suggested that the federal legislation preempted the state's ability to broaden the program. *Sullivan Associates*, 250 Conn. at 774, 739 A.2d at 246; but see *Knapp*, 54 F.3d at 1282 ("[i]t seems questionable, however, to allow a state to make a voluntary federal program mandatory"). The New Jersey Supreme Court in *Franklin Tower One* was not persuaded by the Seventh Circuit in *Knapp* and distinguished the New Jersey statute from the Wisconsin statute where the New Jersey statute "prohibit[ed] discrimination based on the source of a lawful rent payment." *Franklin Tower One*, 157 N.J. at 619, 725 A.2d at 1112-13.

We decline to adopt the reasoning in *Knapp* that Section 8 vouchers are not included as a source of income discrimination. Based on the foregoing analysis, we find that Section 8 rental assistance vouchers are a "source of income" under the Fair Housing Ordinance.

■ Next, defendants contend that the trial court erred in reversing the Commission's determination that plaintiffs discriminated against Sullivan-Lackey based on her source of income. In addressing defendants' contention, we apply the Commission's construction of the Fair Housing Ordinance to this case. A court may not overturn an administrative decision unless the authority of the administrative body was exercised in an arbitrary or capricious manner or the decision is against the manifest weight of the evidence. *O'Neil*, 301 Ill. App. 3d at 400.

The Commission maintains that whether plaintiffs violated the ordinance turns on plaintiffs' reasons for refusing Sullivan-Lackey's Section 8 vouchers and whether any reason for the refusal implicated a substantial financial burden upon plaintiffs. Plaintiffs fail to address this test on appeal, instead asserting that they had insufficient notice as to applying to the Section 8 program and that they did not discriminate against Sullivan-Lackey since she was welcome as a tenant, as long as she did not use Section 8 vouchers to pay rent.

The Commission found that, based on the undisputed facts, plaintiffs discriminated against Sullivan-Lackey because they denied her the apartment based on the source of income with which she was going to pay rent. Plaintiffs did not submit any evidence to the Commission that they would be subjected to a substantial financial burden if they had to follow the Section 8 regulatory requirements. The Commission states that the two primary requirements for any Section 8 tenancy are that: (1) landlords must charge reasonable rent; and (2) the housing unit satisfies specified quality standards. The Commission's findings that (1) plaintiffs would not have been subjected to a substantial burden, and (2) plaintiffs discriminated against Sullivan-

Lackey in denying her tenancy based on her source of income are not against the manifest weight of the evidence.

We find plaintiffs' further claim of insufficient notice without merit. The only authority cited by plaintiffs on this assertion relates to the strict construction of criminal or penal statutes (see *People v. Woodard*, 175 Ill. 2d 435 (1997); *City of Chicago v. Morales*, 177 Ill. 2d 440 (1997)), which is not relevant to the construction of the Fair Housing Ordinance. Moreover, the Supreme Court has allowed enactments with civil rather than criminal penalties to be less precise because the consequences of imprecision are qualitatively less severe. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498-99, 71 L. Ed. 2d 362, 372, 102 S. Ct. 1186, 1193 (1982); accord *Russell v. Department of Natural Resources*, 183 Ill. 2d 434, 443 (1998).

The Commission has issued several rulings requiring landlords to seek Section 8 certification when approached by a Section 8 prospective tenant. Plaintiffs chose to enter the arena of renting residential property, and it is illogical for them to disavow knowledge as to the requirements imposed by such actions.

■ Finally, Sullivan-Lackey maintains that the Commission's award of fees and costs was proper. Plaintiffs respond that the Commission has no authority to award civil damages. Plaintiffs' claim is unsupported by the statute.

Section 2—120—510(l) of the Fair Housing Ordinance explicitly gives the Commission the authority:

> "To render a decision upon the conclusion of a hearing, or upon receipt of a hearing officer's recommendation at the conclusion of a hearing, including findings of fact relating to the complaint, and to order such relief as may be appropriate under the circumstances determined in the hearing. Relief may include but is not limited to an order: *** to pay actual damages, as reasonably determined by the Commission, for injury or loss suffered by the complainant; *** to pay to the complainant all or a portion of the costs, including reasonable attorney fees, expert witness fees, witness fees, and duplicating costs, incurred in pursuing the complaint before the Commission or at any stage of judicial review[.]" Chicago Municipal Code § 2—120—510(l) (2003).

Additionally, section 7—108(A) of the Illinois Human Rights Act provides:

> "A political subdivision, or two or more political subdivisions acting jointly, may create a local department or commission as it or they see fit to promote the purposes of this Act and to secure for all individuals within the jurisdiction of the political subdivision or subdivisions freedom from unlawful discrimination, sexual harass-

ment in employment and sexual harassment in higher education. The provisions of any ordinance enacted by any municipality or county which prohibits broader or different categories of discrimination than are prohibited by this Act are not invalidated or affected by this Act." 775 ILCS 5/7—108(A) (West 2000).

The Act permits municipalities to pass antidiscrimination measures more sweeping in scope than Illinois law, and Chicago's fair housing provisions have been found to be expansive in scope. *Becovic v. City of Chicago*, 296 Ill. App. 3d 236, 239 (1998). Based on this authority, the Commission is authorized to award civil damages following hearings.

Having determined that fees and costs are an appropriate award, we note that the reasonableness of attorney fees requested is within the discretion of the trial court. *Raintree Health Care Center v. Illinois Human Rights Comm'n*, 173 Ill. 2d 469, 494 (1996). We find the award of $16,284 in attorney fees is not an abuse of discretion when the amount is commensurate with the work done over the course of Sullivan-Lackey's complaint with the Commission, including hearings, depositions, and a conciliation hearing.

For the foregoing reasons, we reverse the circuit court of Cook County and reinstate the findings of the Chicago Commission on Human Relations.

Judgment reversed; order of the Commission reinstated.

REID and NEVILLE, JJ., concur.