Nos. 1-06-0416 & 1-06-0618
Consolidated

FIRST DIVISION
Filed: 6-18-07

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| JUDY GASTON, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 04 CH 118986 |
| | ) | |
| CHAC, INC., | ) | Honorable |
| | ) | Martin S. Agran, |
| Defendant-Appellant. | ) | Judge Presiding. |

| | | |
|---|---|---|
| PRECIOUS BRANTLEY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 04 CH 3049 |
| | ) | |
| CHAC, INC., | ) | Honorable |
| | ) | Martin S. Agran, |
| Defendant-Appellant. | ) | Judge Presiding |

JUSTICE ROBERT E. GORDON delivered the opinion of the court:

No. 1-06-0416 & 1-06-0618 Consol.

Defendant CHAC, the Chicago housing choice voucher program, terminated the housing assistance payments of plaintiffs Judy Gaston and Precious Brantley for their failure to report their respective employment and earnings to CHAC. On October 12, 2005, the circuit court of Cook County reversed CHAC's decision to terminate Gaston's payments; and on November 9, 2005, it reversed CHAC's decision to terminate Brantley's payments. We affirm both decisions of the circuit court, for the reasons set forth below.

BACKGROUND

Defendant CHAC is a private corporation that administers the "Housing Choice Voucher Program" of the United States Department of Housing and Urban Development (HUD). 24 C.F.R. §982.1(a)(1) (2006). As part of the program, "HUD pays rental subsidies so eligible families can afford decent, safe and sanitary housing." 24 C.F.R. §982.1(a)(1) (2006). HUD "provides housing assistance funds" to CHAC; and then CHAC makes payments directly to landlords, on behalf of the tenants in the program. 24 C.F.R. §981.1(a)(1), (2) (2006).

A family in the program may select its own rental unit, as long as it meets the program's "housing quality standards." 24 C.F.R. §982.1(a)(2) (2006). If CHAC approves the family's selected unit, then CHAC contracts with the owner of the unit "to make rent subsidy payments on behalf of the family." 24 C.F.R. §982.1(a)(2) (2006).

Every year CHAC requires tenants in its program to complete an application for continued occupancy, as part of its "regularly scheduled reexamination *** of family income and composition." 24 C.F.R. §982.551(b)(2) (2006). The multipage application asks for detailed

2

information about family composition and income, including a description of any employment and earnings during the prior 12 months.

The families of both plaintiffs received housing assistance from CHAC. Gaston lived with her son; and Brantley, who is disabled, lived with her two sons and a daughter. Both families were terminated from the program because of their failure to report their employment and earnings on the annual applications. In both cases, CHAC received accurate reports of the plaintiffs' employment and earnings from the Social Security Administration, which led to their termination from the housing program.

<u>Facts Particular to the Gaston Case</u>

On August 7, 2003, as part of the application for continued occupancy, Gaston signed a preprinted form entitled "Non-Income Affidavit" which stated that she did not have any income. In 2003, her rent was $650, of which she paid only $161.

A Social Security printout for Gaston showed that in the designated years she had the following earnings:

| | |
|---|---|
| 1994-97 | $ 0 |
| 1998 | $ 2,341 |
| 1999 | $ 8,212 |
| 2000 | $ 8,001 |
| 2001 | $ 3,863 |
| 2002 | $ 10,042 |
| 2003 | $ 0. |

An "intent to terminate" notice dated December 11, 2003, and mailed to Gaston stated that CHAC intended to terminate her from the voucher program:

"This action is being undertaken because:

Under the terms of its voucher, the family must not commit fraud,

bribery or any other corrupt act in connection with the program.

Any information the [sic] supplies must be true and complete. The

Social Security Statement for Judy showed wages earned from 1998

to present, no wages were reported to CHAC."

The letter stated that Gaston may "stop this termination action by taking the following action:"

"Use the attached form to request an informal hearing. Bring an

SEQY statement from the Social Security Administration showing

wages earned by Judy from 1998 to present and tax returns for Judy

from 1998 to present."

Gaston submitted a note to CHAC that stated: "Here are my check stubs when I started working in March but I am not working now. It ended April 29, 2004." The check stubs showed gross earnings of $504 in March 2004.

On September 8, 2004, CHAC held a hearing to determine whether to uphold it's termination of Gaston from the voucher program. A hearing officer heard testimony from Anne Richmond, a housing specialist from CHAC, and Gaston. The "Record of Administrative Proceedings" indicates that the following evidence was presented to the hearing officer:

1. a housing assistance payments contract, dated October 24, 2001;

2. a list of housing assistance payments for Gaston from January 1, 1990, to December 10, 2004;

3. a list of housing assistance payments to previous landlords on behalf of Gaston from January 1, 1999, from October 1, 2001;

4. the first page of an application for continued occupancy, dated August 7, 2003;

5. a nonincome affidavit, dated August 7, 2003;

6. a CHAC computer printout and a handwritten form with entries concerning Gaston's tenant history from October 16, 2002, to September 8, 2004;

7. a Social Security statement, dated September 8, 2003;

8. a notice of intent to terminate, dated December 11, 2003;

9. a Social Security Administration computer printout showing Gaston's benefits, dated December 19, 2003;

10. copies of pay stubs for Gaston, from March 18, 2004, to May 6, 2004;

11. a handwritten note from Gaston, dated June 7, 2004; and

12. a CHAC interoffice memorandum, dated September 7, 2004,

No. 1-06-0416 & 1-06-0618 Consol.

concerning the upcoming hearing.

A letter to the plaintiff, dated October 18, 2004, entitled "notice of informal hearing decision," stated that the hearing officer upheld the termination. Gaston then filed a pro se complaint dated November 15, 2004, in the circuit court to appeal CHAC's decision. A letter dated December 7, 2004, entitled "final termination" stated that Gaston's housing assistance payments had been terminated effective December 31, 2004.

On October 12, 2005, the circuit court issued a memorandum opinion reversing CHAC's decision to terminate. CHAC claimed that Gaston's 1998 to 2002 applications for continued occupancy showed that Gaston failed to report her income. However, the trial court refused to consider these documents because they had not been presented to the hearing officer as evidence. The nonincome affidavit for 2003 was presented to the hearing officer; however, the Social Security printout showed that Gaston had no income for that year. Thus, the trial court concluded that the decision of the CHAC hearing officer was against the manifest weight of the evidence.

CHAC filed a motion to reconsider with the trial court in which it argued that Gaston failed to report her 2002 income on her 2003 application for continued occupancy. The second page of the application asks an applicant to list all employment for the past 12 months. However, the "Record of Administrative Proceedings" shows that CHAC provided the hearing officer with evidence of only the first page of the 2003 application. Thus, the hearing officer did not have the information on which CHAC based its motion. The trial court denied defendant's motion to reconsider, and this appeal followed. On appeal, CHAC claims that the hearing officer's decision

No. 1-06-0416 & 1-06-0618 Consol.

was not against the manifest weight of the evidence.

Facts Particular to the Brantley Case

Brantley's 2002 federal tax return reported a gross income of $12,500. In addition, a Social Security printout showed that in the following years, Brantley had the following earnings:

| | |
|---|---|
| 1997–2001 | $ 0 |
| 2002 | $ 11,544. |

The printout also stated that Brantley is a "disabled individual," who receives Social Security benefits.

On Brantley's application for continued occupancy, dated February 28, 2003, she reported that she had no employment during the prior 12 months, from February 28, 2002, through February 28, 2003. Her 2004 application also reported no employment. Her rent, as of May 24, 2004, was $1,070, of which she paid only $216.

In a letter dated June 29, 2004, the Social Security Administration reduced her benefits. On August 8, 2004, Brantley applied to CHAC for an interim rent adjustment due to the reduction in her Social Security benefits. On September 14, 2004, in response to Brantley's interim request, CHAC reduced her share of the rent from $216 to $67.

In a handwritten letter dated October 2004, Brantley stated:

"I moved in City July 2002 and I did hair the six months I live in [sic] Schumburg and I received my section 8 Voucher in July 2002 I did hair for two months so I could get some beds because I didn't

7

No. 1-06-0416 & 1-06-0618 Consol.

have none when I moved in ***."

Since Brantley worked for two months after she received her voucher in July 2002, she was not truthful on her February 28, 2003 application where she stated that she had not been employed during the prior 12 months.

An "intent to terminate" notice, dated November 15, 2004, stated that CHAC intended to terminate Brantley from the voucher program:

"This action is being undertaken because:

Under the terms of its voucher, the family must not commit fraud,

bribery or any other corrupt or criminal act in connection with the

program. Any information the family submits must be true and

complete. CHAC received a statement from the Social Security

Administration showing your benefits were decreased due to

wages."

The letter stated that Brantley may "stop this termination action by taking the following action no later than 12/31/04." The action was to "[s]ubmit a copy of an SEQY statement from the Social Security Administration showing wages for 2002 to present."

On November 17, 2004, CHAC held a hearing at which Brantley testified, as well as Anne Richmond, a housing specialist from CHAC. In the "notice of informal hearing decision," the hearing officer summarized Brantley's testimony as follows:

"At the hearing, Ms. Brantley testified that she made this money

8

when she first moved to Chicago to earn money to buy furniture. Ms. Brantley testified that [sic] worked as a hairdresser for two months after she moved to Chicago and that she had actually been working since January of that year."

The "record of administrative proceedings" indicates that the following evidence was presented to the hearing officer:

1. Brantley's unsigned federal tax return for the year 2002;

2. her application for continued occupancy, dated February 28, 2003;

3. her application for continued occupancy, dated March 22, 2004;

4. a notice of rent adjustment, dated May 24, 2004;

5. a United States Department of Housing and Urban Development family report, dated May 24, 2004;

6. a Social Security Administration notice of planned action, dated June 29, 2004;

7. two customer receipts, dated July 19, 2004, and August 2004, showing visits by Brantley to a CHAC housing specialist;

8. a resident's application and certification for interim rent adjustment, dated August 5, 2004;

9. an interim recertification request acknowledgment follow-up or denial form, dated August 6, 2004;

10. a handwritten letter from Brantley to CHAC, received August 13, 2004;

11. an interim recertification request acknowledgment, follow-up or denial form, dated August 23, 2004;

12. a Social Security Administration computer printout showing Brantley's benefits history for August 1, 2003 through March 1, 2005;

13. a United States Department of Housing and Urban Development facsimile cover sheet (internal) to Lana Bala from Rebecca Taylor, dated September 14, 2005, requesting an investigation of Brantley;

14. a United States Department of Housing and Urban Development family report, dated September 14, 2004;

15. a notice of rent adjustment, dated September 14, 2005;

16. section 8 payment adjustment information, dated September 14, 2004;

17. a handwritten letter from Brantley to CHAC, received October 6, 2004;

18. a notice of approval or denial of request for informal review or hearing, dated November 3, 2004;

No. 1-06-0416 & 1-06-0618 Consol.

             19.  letters from Brantley to CHAC, received December 1,

2004; and

             20.  an intent to terminate notice, dated November 15, 2004.

In a letter dated January 26, 2005, CHAC informed Brantley that her housing assistance payments would be terminated as of February 28, 2005. Brantley filed a pro se petition with the circuit court seeking review of CHAC's decision. She alleged that she was given until December 31, 2005, to provide verification of her income and that she was terminated from the program before that date.

On November 9, 2005, the trial court issued a memorandum opinion reversing CHAC's decision to terminate. CHAC filed a motion to reconsider with the trial court claiming that Brantley admitted that she had not reported her wages. On February 16, 2006, the trial court denied defendant's motion to reconsider, and this appeal followed. On appeal, CHAC claims that the hearing officer's decision was not against the manifest weight of the evidence. Brantley has not filed a brief in this matter.

ANALYSIS

In administrative review cases, this court reviews the decision of the administrative agency, not the decision of the circuit court. Ahmad v. Board of Education of the City of Chicago, 365 Ill. App. 3d 155, 162 (2006); Godinez v. Sullivan-Lackey, 352 Ill. App. 3d 87, 90 (2004). When this court reviews the decision of an administrative agency concerning a question of fact, we will not reverse unless the decision is against the manifest weight of the evidence.

11

No. 1-06-0416 & 1-06-0618 Consol.

Ahmad, 365 Ill. App. 3d at 162. A hearing officer acts as a fact finder, hearing testimony, determining the credibility of witnesses and drawing reasonable inferences from the evidence. Ahmad, 365 Ill. App. 3d at 162. The agency's factual findings are "considered prima facie true and correct." Ahmad, 365 Ill. App. 3d at 162; Godinez, 352 Ill. App. 3d at 90. An agency's factual finding is against the manifest weight of the evidence only if "the opposite conclusion is clearly evident." Ahmad, 365 Ill. App. 3d at 162.

The standard of review is different, however, when this court reviews the decision of an administrative agency concerning a question of law. Ahmad, 365 Ill. App. 3d at 162-63. Then the standard of review is de novo. Ahmad, 365 Ill. App. 3d at 163; Godinez, 352 Ill. App. 3d at 90.

CHAC terminated both plaintiffs from the voucher program because of their failure to report their entire household income. Section 982.551 of the Code of Federal Regulations lists the "family obligations" of participants in the voucher program. One of the obligations is to "supply any information requested *** for use in a regularly scheduled reexamination *** of family income" 24 C.F.R. §982.551(b)(2) (2006). "Any information supplied by the family must be true and complete." 24 C.F.R. §982.551(b)(4) (2006).

Section 982.552 governs termination from the program. Subsection (b) lists the reasons for which the agency "must" terminate families from the program, and subsection (c) lists the reasons for which the agency "may" terminate. 24 C.F.R. §982.552 (2006). One of the discretionary grounds listed in subsection (c) is: "If the family violates any family obligations under the program (see Sec. 982.551)." 24 C.F.R. §982.552(c)(1)(I) (2006).

12

No. 1-06-0416 & 1-06-0618 Consol.

Subsection (c) lists "relevant circumstances" for the agency to consider before terminating in a discretionary case:

"1. the seriousness of the case; 2. the extent of participation or culpability of individual family members; 3. mitigating circumstances related to the disability of a family member; and 4. the effects of denial or termination of assistance on other family members who were not involved in the action or failure." 24 C.F.R. §982.552(c)(2)(I) (2006).

In addition, "[i]f the family includes a person with disabilities," any decision by the agency must be "subject to consideration of reasonable accommodation." 24 C.F.R. §982.552(c)(2)(iv) (2006).

The decisions by the agency in both the Gaston and Brantley cases do not indicate that the hearing officer considered any of these circumstances. The decisions simply summarized the testimony presented at the hearing, without making credibility determinations or other factual findings. The decisions then stated that the plaintiff had presented "no credible evidence" that she was "not in violation of her family obligations." The hearing officer did not offer any reasons for why she chose to exercise her discretion to terminate in these particular cases.

Subsection (c) states that, in deciding whether to terminate in discretionary cases, the agency "may consider all relevant circumstances," and then provides a list. 24 C.F.R. §982.552(c)(2)(i) (2006). Thus, the agency has the freedom to consider circumstances other than

13

No. 1-06-0416 & 1-06-0618 Consol.

the ones listed, if it finds that other circumstances are more "relevant" to the particular case at hand. While Subsection (c) does not limit the agency to consideration of the listed "circumstances," the agency must consider some circumstances particular to the individual case, otherwise section 982.552's distinction between mandatory and discretionary terminations becomes meaningless. A section must be construed "as a whole, so that no part is rendered meaningless or superfluous." People v. Jones, 223 Ill. 2d 569, 581 (2006).

The decisions in both the Gaston and Brantley cases treat the violations as mandatory, rather than discretionary. Both decisions simply find each participant "in violation" without consideration of any "circumstances" relevant to their particular cases.

<u>Analysis Particular to the Brantley Case</u>

In addition, in the Brantley case, the hearing officer did not consider whether a "reasonable accommodation" was required because Brantley was a person with disabilities. Section 982.552, which governs termination from the voucher program, provides that "[i]f the family includes a person with disabilities," any decision by the agency must be "subject to consideration of reasonable accommodation." 24 C.F.R. §982.552(c)(2)(iv) (2006).

The record before the hearing officer contained a number of references to Brantley's disabled status. The Social Security printout, which was part of the record before the hearing officer, stated that Brantley was a "disabled individual." Her handwritten letters, which were also before the hearing officer, stated that she was disabled. The "notice of planned action" from the Social Security Administration, which reduced her benefits, stated that she was "disabled."

14

No. 1-06-0416 & 1-06-0618 Consol.

Although the hearing officer had ample evidence of Brantley's disabled status, the decision does not indicate that it was made "subject to consideration of reasonable accommodation," as the Code requires.

Brantley appeared pro se in all the proceedings in this case and chose not to file a brief with this court. The Illinois Supreme Court has held that when a reviewing court lacks an appellee's brief, it may still decide the issues, if they are clear from the record. In re Marriage of Rogers, 213 Ill. 2d 129, 135 (2004). In the instant case, the issues were clear, and we can decide them easily "without the aid of an appellee's brief." In re Marriage of Rogers, 213 Ill. 2d at 135.

Analysis Particular to the Gaston Case

In addition, in the Gaston case, the factual finding of the hearing officer was against the manifest weight of the evidence presented at the hearing. The "Record of Administrative Proceedings" shows that the hearing officer was presented with only one document in which Gaston swore she had no income: the "non-income affidavit" for the year 2003. The Social Security printout, which was also presented to the hearing officer, confirmed that she had, in fact, no earnings for 2003. Thus, the documents presented to the hearing officer by CHAC, instead of showing a violation, actually proved just the opposite – that Gaston had been truthful.

To the trial court, CHAC did present copies of Gaston's applications for continued occupancy for the years 1998 through 2002. However, the trial court refused to consider these documents, and this court must do the same for the same reason. The documents were not part of

15

No. 1-06-0416 & 1-06-0618 Consol.

the record before the hearing officer and were not received in evidence. When a court reviews the decision of an administrative agency to determine if its decision is against the manifest weight of the evidence, the court must review only "the record of the administrative proceedings." Biscan v. Village of Melrose Park Board of Fire & Police Commissioners, 277 Ill. App. 3d 844, 847 (1996). See also Marshall v. Metropolitan Water Reclamation District Retirement Fund, 298 Ill. App. 3d 66, 76 (1998) ("the circuit court's purpose was to review the evidence adduced before" the administrative agency). Thus, the 1998-2002 applications cannot be used to uphold the hearing officer's decision.

CHAC claims in its brief to this court, as it did on its motion to reconsider, that Gaston failed to report her 2002 income on her 2003 application for continued occupancy. As noted above, the second page of the application asks for a list of all employment in the past year. However, the "record of administrative proceedings" shows that CHAC failed to provide the hearing officer with the second page. CHAC included only the first page of the 2003 application in evidence in the administrative record. Thus, Gaston's failure to report her 2002 income was not in evidence before the hearing officer and cannot be considered on appeal.

CONCLUSION

For the foregoing reasons, the decisions of the circuit court in both the Gaston and Brantley cases are affirmed.

Affirmed.

McBRIDE, P.J. and CAHILL, J., concur.

16