# Illinois Official Reports

## Appellate Court

---

**Hawkins v. Chicago Comm'n on Human Relations, 2020 IL App (1st) 191301**

---

| | |
|---|---|
| Appellate Court Caption | THOMASINA HAWKINS, Plaintiff-Appellant, v. THE CHICAGO COMMISSION ON HUMAN RELATIONS and MAC PROPERTY MANAGEMENT, LLC, Defendants-Appellees. |
| District & No. | First District, Sixth Division<br>No. 1-19-1301 |
| Filed | April 17, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 18-CH-5027; the Hon. Michael T. Mullen, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Donteé Brown, of Tinley Park, for appellant.<br><br>Stacey L. Smiricky and Sean J. Powell, of Faegre Drinker Biddle & Reath LLP, of Chicago, for appellee Mac Property Management, LLC.<br><br>No brief filed for other appellee. |
| Panel | JUSTICE HARRIS delivered the judgment of the court, with opinion.<br>Justice Cunningham and Justice Connors concurred with the judgment and opinion. |

**OPINION**

¶ 1    The Chicago Commission on Human Relations (Commission) found no substantial evidence of housing discrimination by defendant Mac Property Management, LLC (Mac), based on plaintiff Thomasina Hawkins's use of a housing choice voucher. Plaintiff filed a writ of *certiorari* to the circuit court, which was denied. On appeal, plaintiff contends denial was improper where the Commission raised the affirmative defense of business necessity *sua sponte* and plaintiff did not have an opportunity to rebut the affirmative defense with a less discriminatory alternative. For the following reasons, we reverse and remand the case to the Commission for a new hearing.

## I. JURISDICTION

¶ 2

¶ 3    Appeal of the Commission's final order requires a common-law writ of *certiorari* to the circuit court. Plaintiff filed a writ of *certiorari* on April 18, 2018. The trial court denied the writ on April 1, 2019. Plaintiff filed a motion to reconsider, which was denied on May 29, 2019. Plaintiff filed her notice of appeal on June 25, 2019. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and Rule 303 (eff. July 1, 2017), governing appeals from final judgments entered below.

## II. BACKGROUND

¶ 4

¶ 5    Plaintiff is a recipient of a housing choice voucher, commonly known as "Section 8" rental assistance, which is administered by the Chicago Housing Authority (CHA). The voucher enables plaintiff to rent a two-bedroom apartment at a predetermined maximum rent. CHA rules require voucher holders to sign leases for 12 months or more.

¶ 6    On January 30, 2015, plaintiff called Mac to inquire about available apartments. Plaintiff spoke to a leasing agent who told her he would send a list to her e-mail, but plaintiff did not receive a list. On February 23, 2015, plaintiff went to Mac's office and spoke with leasing agent Travis Mahrt. He told plaintiff to fill out an online application, which she did. On February 27, 2015, plaintiff sent Mahrt a list of apartments she wanted to view. Through an e-mail, Mahrt responded that plaintiff needed to bring her CHA moving papers before they could check her credit and that only one of the apartments, located at 5401 S. Drexel Boulevard, was available. The other properties, 5308 S. Greenwood Avenue, 5326 S. Greenwood Avenue, and 5320 S. Drexel Boulevard, were not available because Mac allowed only nine-month leases for those units.

¶ 7    When plaintiff met with Mahrt later that day, he explained that the nine-month leases were based on the academic school year. Plaintiff offered to lease for more than 12 months to accommodate the nine-month lease schedule, but Mahrt stated that she could not rent for more than 12 months.

¶ 8    Plaintiff filed a complaint with the Commission alleging disparate treatment based on source of income and that Mac's nine-month lease policy "may have a disparate impact" on voucher holders. In response to the complaint, Mac acknowledged that plaintiff was a recipient of the housing voucher. Mac admitted that Mahrt sent plaintiff an e-mail stating that she needed to bring her moving papers before her credit check could be completed and that 5401 S. Drexel

was available for viewing. Mac also acknowledged that plaintiff offered to lease for more than 12 months.

¶ 9    However, Mac denied that plaintiff completed an application. Mac also denied that Mahrt told plaintiff that units at 5308 S. Greenwood, 5326 S. Greenwood, and 5320 S. Drexel were not available because a nine-month lease was required. It denied that Mahrt informed plaintiff that the nine-month leases were based on the academic school year. Under "Affirmative Defenses," Mac stated that it "acted in good faith at all times, and all decisions and actions regarding [plaintiff's] housing were legitimate and non-discriminatory, and no unlawful factor motivated Mac."

¶ 10    Evidence submitted to the Commission included a recording of a telephone call between Mahrt and plaintiff. Plaintiff told Mahrt that she "does not know where her credit is" and that she has been "displaced for a year and 4 months." Mahrt responded that plaintiff needs to bring in her moving papers to document her income so that he can process her application. Plaintiff offered to e-mail the documents. In an e-mail dated February 27, 2015, plaintiff told Mahrt she would like to view 5308 S. Greenwood, 5326 S. Greenwood, 5320 S. Drexel, 5401 S. Drexel, and 5118 S. Kimbark. Mahrt responded that he needed plaintiff's moving papers before he could run a credit check and that only 5401 S. Drexel was available for showing because "[t]he others were only available for 9-month leases." An e-mail from Mahrt to plaintiff stated that there was a two-bedroom basement apartment available at 47th and Ellis for under $1200. He was "not sure if basement apartments pass CHA inspection, but if you'd like to see it, please let me know."

¶ 11    The Commission issued investigative orders to plaintiff and Mac. The Commission asked Mac to explain Mahrt's e-mail that stated, "The others were only available for 9-month leases." Mac responded that it "has certain buildings that have shorter lease terms due to business considerations, including seasonality issues. Historical data shows certain best times to lease so there are no vacancies at the property." The Commission also asked Mac to provide the front page of contracts for eight applicants whom Mac had approved and whose income derived from housing vouchers.

¶ 12    In its determination, the Commission noted that a housing choice voucher is a source of income and that a respondent must allow a housing applicant to apply for housing and be "possibly approved for occupancy." The Commission found that plaintiff "never viewed any properties and never submitted documentation that she had a Voucher or any other income." It also determined that "[t]here is no evidence that a similarly situated applicant, without a Housing Choice Voucher, was treated more favorably under similar circumstances. Furthermore, the evidence shows that [Mac] rented to three Housing Choice Voucher recipients at 5328 S. Greenwood, 5322 S. Drexel, and 1029 E. 53rd Street." The Commission found no substantial evidence "that a similarly situated applicant, without a Housing Choice Voucher, was treated more favorably under similar circumstances."

¶ 13    Regarding plaintiff's disparate impact claim, the Commission noted that plaintiff must allege that a policy, although neutral on its face, had a disparate impact on voucher holders. However, "disparate impact can be justified by business necessity." The Commission found that "the duration of a lease is a lease term [ ] distinct from a rental screening policy" and property owners "have a legitimate business interest in setting lease terms." Mac's decision to use a nine-month lease term on certain properties "ensure[d] full occupancy due to the proximity between the properties and the University of Chicago."

¶ 14        For these reasons, the Commission found "no substantial evidence of discrimination based on source of income" and dismissed the case.

¶ 15        Plaintiff filed a request for review with the Commission. Plaintiff argued that the Commission erred in raising the affirmative defense of business necessity *sua sponte* and not allowing plaintiff to provide a less discriminatory alternative to Mac's nine-month lease policy. Plaintiff asserts on appeal that she challenged only the Commission's disparate impact determination because, after the dismissal, she gained access to the case file for the first time and viewed the information Mac provided the Commission on other voucher tenants. As a result, plaintiff "abandoned" her disparate treatment claim in her request for review.

¶ 16        The Commission denied plaintiff's request for review. It noted that a request for review is an opportunity for plaintiff to present newly discovered evidence or new and dispositive legal precedent not available at the time of the original decision. The Commission reiterated that plaintiff never actually submitted an application to lease any of Mac's apartments and that Mac had indicated "[f]rom the beginning of their correspondence *** that many of its apartments, particularly those in close proximity to the University of Chicago's campus, are only available for leases with 9-month terms." The Commission stated that, to claim disparate impact, plaintiff must show that Mac's policy, although neutral on its face, had a disparate impact on voucher holders. If plaintiff meets that burden, Mac must show a reasonable business justification for its policy. If Mac meets its burden, plaintiff "must show that a less restrictive alternative is available that would not potentially exclude Housing Choice Voucher holders." The Commission found that Mac "set forth a legitimate business reason for offering certain apartments at only a 9-month lease term."

¶ 17        The Commission then addressed plaintiff's claim on review that Mac failed to raise the affirmative defense of business necessity and that the Commission raised the issue *sua sponte*. It found plaintiff's claim without merit. The Commission stated that plaintiff

> "was on notice from the time she filed her complaint that [Mac] took the position that it would only lease certain apartments close to the University of Chicago's campus for 9-month terms because [Mac] wanted to ensure that those apartments remained occupied. In its response to the complaint, [Mac] raised the defense that its decisions with regard to its lease terms were 'legitimate and non-discriminatory.' [Mac] argued that its historical data with regard to apartment occupancy necessities [*sic*] the use of 9-month leases for properties in close proximity to University of Chicago's campus. At no point in the investigation into [plaintiff's] claims did she raise even the possibility of a less restrictive alternative to [Mac's] policy with regard to the terms of certain leases" even though she "had ample opportunity to present evidence of a less restrictive alternative."

Since plaintiff's request for review "offer[ed] no new rationale as to why her complaint should not be dismissed for lack of substantial evidence," the Commission denied the request.

¶ 18        Plaintiff filed a writ of *certiorari* with the circuit court for review of the Commission's determination. Therein, plaintiff argued that the Commission violated its regulations by raising the affirmative defense of business necessity *sua sponte*. By doing so, plaintiff was deprived of an opportunity to offer a less discriminatory alternative, which is "a required and vital step in the disparate impact analysis." After briefing and oral argument, the court denied the writ. Plaintiff filed a motion to reconsider, which the court denied because "there was no misapplication of law, there was no newly discovered evidence and there has been no change

in the law." Plaintiff filed this appeal.

¶ 19                                    III. ANALYSIS

¶ 20        A party may seek judicial review of the Commission's final determination by filing a petition for writ of *certiorari* in the chancery division of the circuit court. *Powell v. City of Chicago Human Rights Comm'n*, 389 Ill. App. 3d 45, 53-54 (2009). On appeal, this court reviews the Commission's decision, not that of the circuit court. *Godinez v. Sullivan-Lackey*, 352 Ill. App. 3d 87, 90 (2004).

¶ 21        Plaintiff's complaint alleged source-of-income discrimination based on her use of a Section 8 voucher. Section 5-8-030 of the Chicago Municipal Code states that:

> "It shall be an unfair housing practice and unlawful for any owner, lessee, sublessee, assignee, managing agent *** or other person, firm or corporation having the right to sell, rent, lease, sublease, or establish rules or policies for any housing accommodation, within the City of Chicago ***:
>
>> A. To make any distinction *** or restriction against any person in the price, terms, conditions or privileges of any kind relating to the sale, rental, lease or occupancy of any real estate used for residential purposes in the City of Chicago *** predicated upon the *** source of income of the prospective or actual buyer or tenant thereof." Chicago Municipal Code § 5-8-30 (amended Apr. 9, 2008).

The Commission has held that "a complainant can prove source of income discrimination by showing that they were denied a rental opportunity because they intended to make use of Section 8 funding." *Sullivan-Lackey v. Godinez*, CCHR No. 99-H-89, at 5 (July 18, 2001); *Godinez*, 352 Ill. App. 3d at 91.

¶ 22        Plaintiff's complaint alleged both a disparate treatment and a disparate impact theory of discrimination. On appeal, however, plaintiff has abandoned disparate treatment and proceeds on disparate impact theory alone. A *prima facie* case of discrimination based on disparate impact is established if a practice, while facially neutral, has a significant discriminatory impact on a protected group to which the plaintiff belongs. *Board of Trustees of Southern Illinois University v. Knight*, 163 Ill. App. 3d 289, 294 (1987). The United States Supreme Court recognized that disparate impact liability based solely upon a showing of a statistical disparity raises serious constitutional concerns. *Texas Department of Housing & Community Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 540 (2015). Therefore, in order to establish a *prima facie* case of disparate impact, plaintiff must also point to a policy of defendant's causing the disparity. *Id.* at 542. This causality requirement ensures that defendants are not held liable for disparities they did not create. *Id.* "A plaintiff who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection cannot make out a prima facie case of disparate impact." *Id.* at 543.

¶ 23        Here, plaintiff is a Section 8 voucher holder, and the program requires leases of at least one year. Mac does not dispute that, for its properties requiring nine-month leases, plaintiff as a voucher holder is precluded from applying. There is no question that all Section 8 voucher holders are significantly impacted because they are precluded from leasing these apartments as a result of Mac's policy. Mac did not even allow plaintiff to view apartments with nine-month leases. Therefore, plaintiff has stated facts showing a causal connection between Mac's policy and a significant disparate impact on Section 8 voucher holders.

¶ 24 Mac argues that plaintiff also needs to show that she completed an application as an element of her *prima facie* case, because she must have been ready and able to rent the property at issue. However, the Commission case cited in support refers to the completed application as an element of a disparate *treatment* claim. See *Gardner v. Olaitan*, CCHR No. 10-H-50, at 10 (Dec. 19, 2012). According to the Commission, a completed application is a necessary element to "establish a *prima facie* case for intentional housing discrimination under the indirect method." *Id.* Plaintiff's contentions on appeal involve only her claim of disparate impact. Facts or statistical evidence showing a causal connection between the challenged policy and a significant disparity sufficiently establishes a *prima facie* case of disparate impact. *Texas Department of Housing*, 576 U.S. at 543.

¶ 25 Once a *prima facie* case of disparate impact is shown, the burden shifts to Mac to demonstrate that the practice is justified by business necessity. *Board of Trustees*, 163 Ill. App. 3d at 294; see also *Walton v. Chicago Department of Streets & Sanitation*, CCHR No. 95-E-271 (May 17, 2000) (where the Commission found that discrimination may be established under disparate impact theory by showing that the challenged practice has a significant or substantial statistical impact upon a protected class, which is not justified by business necessity). The business necessity defense fails if legitimate business concerns "can be served by a reasonably available alternative system with less discriminatory effects." *Board of Trustees*, 163 Ill. App. 3d at 295.

¶ 26 Business necessity is a defense that Mac must plead and prove. *Lewis v. City of Chicago*, 560 U.S. 205, 213 (2010). Proof that the challenged policy is necessary to achieve a valid business interest can defeat plaintiff's discrimination claim. *Texas Department of Housing*, 576 U.S. at 541. Since the defense "gives color to [an] opponent's claim but asserts new matter which defeats an apparent right in the plaintiff," business necessity is an affirmative defense. *Raprager v. Allstate Insurance Co.*, 183 Ill. App. 3d 847, 854-55 (1989).

¶ 27 As an affirmative defense, business necessity and the facts in support of the defense must be set forth in the response or answer to the complaint. *Vanlandingham v. Ivanow*, 246 Ill. App. 3d 348, 357 (1993); see also 735 ILCS 5/2-613(d) (West 2016) (facts constituting any affirmative defense "must be plainly set forth in the answer or reply"). The purpose of section 2-613 is to prevent unfair surprise to plaintiff at trial. *Moller v. Lipov*, 368 Ill. App. 3d 333, 345-46 (2006). The Commission's regulations mirror this rule. See Chi. Comm'n on Human Relations Regulation 210.250(a)(3) (2016) ("Any affirmative defenses must be stated in the response in order to be considered in determining whether there is substantial evidence of an ordinance violation.").

¶ 28 Plaintiff contends that Mac did not properly raise the affirmative defense of business necessity but rather that the Commission raised the defense *sua sponte* in violation of its own regulations. Whether the Commission followed its own rules is a mixed question of fact and law, in which historical facts are admitted or established and the rule of law is undisputed. *Clerk of the Circuit Court v. Illinois Labor Relations Board, State Panel*, 2016 IL App (2d) 150849, ¶ 38. The issue is whether the Commission violated the rule of law as applied to the established facts. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210 (2008). When reviewing mixed questions of law and fact, we will reverse the Commission's determination only if it was clearly erroneous. *Id.* at 211. The Commission's determination is clearly erroneous if this court is left with a "definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Id.*

¶ 29　　Generally, an affirmative defense "must be set out completely in a party's answer to a complaint and failure to do so results in waiver of the defense." *Hanley v. City of Chicago*, 343 Ill. App. 3d 49, 53-54 (2003); 735 ILCS 5/2-613(d) (West 2016). An exception to the rule exists where a defendant raises an affirmative defense for the first time in a motion for summary judgment and the plaintiff has ample time before trial to respond to the defense. *Hanley*, 343 Ill. App. 3d at 54. As a result, such a plaintiff is not unfairly prejudiced by the defendant's failure to raise the affirmative defense in its answer. See *id.* (finding that an affirmative defense could be raised in a summary judgment motion where the plaintiff had 45 days prior to trial to respond to the motion); *Rognant v. Palacios*, 224 Ill. App. 3d 418, 422 (1991) (finding that defendant could raise his affirmative defense in a motion for summary judgment where "plaintiff had adequate time to respond to defendant's assertion of the statute of limitations").

¶ 30　　However, in cases where defendants raised an affirmative defense for the first time after the plaintiff completed his or her case-in-chief, courts have been reluctant to consider the defense even if the plaintiff was aware of it during the proceedings. In *Urman v. Walter*, 101 Ill. App. 3d 1085, 1096 (1981), the defendants attempted to plead an affirmative defense following the close of plaintiff's case. The trial court denied defendants' motion for leave to plead the defense as untimely. *Id.* Defendants argued that the court abused its discretion where the plaintiff had notice of the defense prior to trial but did not challenge it. Therefore, the plaintiff waived its right to challenge defendants' failure to plead the defense. *Id.*

¶ 31　　This court affirmed the denial, finding that, although the plaintiff was not " 'totally surprised' " by the affirmative defense, this does not mean "defendants can properly rely on plaintiff's awareness of the potential defense as an excuse for their failure to affirmatively plead it." *Id.* at 1096-97. We rejected defendants' argument that plaintiff had the duty to challenge the potential defense prior to trial, because without an affirmative pleading by defendants, plaintiff had no defense to attack. *Id.* at 1097; see also *McCall v. Chicago Board of Education*, 228 Ill. App. 3d 803, 811 (1992) (finding that the trial court properly refused defendant's request to instruct the jury on an affirmative defense, even though the evidence presented at trial suggested the appropriateness of the defense, where defendant failed to plead it).

¶ 32　　The Commission determined that business necessity was adequately raised because plaintiff was on notice at the time she filed her complaint that Mac's nine-month lease policy mirrored the academic year and Mac raised the affirmative defense that "all decisions and actions regarding [plaintiff's] housing were legitimate and non-discriminatory." Therefore, the Commission concluded that plaintiff "had ample opportunity to present evidence of a less restrictive alternative which she did not do."

¶ 33　　In light of the authority cited above, we find the Commission's determination clearly erroneous. It is undisputed that Mac did not explicitly raise the business necessity defense in its response to plaintiff's complaint, which violates the Commission's own regulation. Although Mac did answer that its decisions regarding plaintiff's housing were "legitimate and non-discriminatory," this defense did not contain sufficient information to notify plaintiff that she would have to address the business necessity of Mac's nine-month policy. In fact, Mac's answer denied every allegation in the complaint that referred to the nine-month lease policy. We cannot conclude that plaintiff had notice of business necessity as Mac's affirmative defense and, as a result, she should have been prepared to challenge that defense before the

Commission. See *Moller*, 368 Ill. App. 3d at 345-46 (finding that a properly raised affirmative defense contains sufficient information to alert plaintiff of the defense she would need to prepare for and address).

¶ 34 We also do not agree with the Commission's determination that plaintiff "had ample opportunity to present evidence of a less restrictive alternative which she did not do." Mac's answer contained no facts setting forth the affirmative defense of business necessity. The first time Mac raised the business necessity defense was in its response to the Commission's investigative order, which asked Mac to explain an e-mail from Mahrt informing plaintiff that the other properties "are only available for 9 month leases." In response to the order, Mac stated that some properties "have shorter lease terms due to business considerations, including seasonality issues." From what we can gather in the record, plaintiff was not given an opportunity to respond to Mac's answers to the investigative order. Plaintiff asserts that she was not even aware of Mac's response until after the Commission dismissed her complaint and she was able to access the case file. Furthermore, even if plaintiff was aware of a potential business necessity defense, she had no duty to attack an affirmative defense that Mac never raised in the pleadings. *Urman*, 101 Ill. App. 3d at 1097.

¶ 35 The Commission dismissed plaintiff's complaint based on business necessity, but Mac never raised that affirmative defense in its answer. As a result, plaintiff did not have a chance to challenge it prior to the Commission's determination. When the defense of business necessity is properly raised, the Commission has found that presenting evidence of a less restrictive alternative is an important component of plaintiff's disparate impact claim. See, *e.g.*, *Campbell v. Brown*, CCHR No. 92-FHO-18-5630, at 26 (Dec. 12, 1992). Plaintiff here should have had the opportunity to make such a showing before the Commission. Accordingly, we reverse the determination of the circuit court and remand the cause to the Commission for a new hearing. See *Anderson v. Human Rights Comm'n*, 314 Ill. App. 3d 35, 52 (2000) (remanding for a new hearing where the erroneous application of the rules of evidence rendered the original hearing unfair to the petitioner).

¶ 36 IV. CONCLUSION

¶ 37 For the foregoing reasons, the judgment of the circuit court is reversed, and the cause is remanded to the Commission for a new hearing.

¶ 38 Reversed and remanded.