# Illinois Official Reports

## Appellate Court

---

### *Stewart v. Boone County Housing Authority*, 2018 IL App (2d) 180052

---

| | |
|---|---|
| Appellate Court Caption | KIMBERLY STEWART, Plaintiff-Appellant, v. THE BOONE COUNTY HOUSING AUTHORITY and FELICIA DAVIS, Defendants-Appellees. |
| District & No. | Second District<br>Docket No. 2-18-0052 |
| Filed | September 28, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Boone County, No. 17-MR-44; the Hon. John H. Young, Judge, presiding. |
| Judgment | Reversed and remanded with directions. |
| Counsel on Appeal | Kira Devin and Emily Hardy, of Prairie State Legal Services, Inc., of Rockford, for appellant.<br><br>Jeffrey R. Hoskins, Staci M. Holthus, and Joshua G. Vincent, of Hinshaw & Culbertson LLP, of Rockford, for appellees. |
| Panel | JUSTICE JORGENSEN delivered the judgment of the court, with opinion.<br>Presiding Justice Hudson and Justice Schostok concurred in the judgment and opinion. |

**OPINION**

¶ 1        Plaintiff, Kimberly Stewart, appeals the decision of defendants, the Boone County Housing Authority (BCHA) and Felicia Davis, a BCHA hearing officer, terminating her housing choice voucher benefits. For the following reasons, we reverse the trial court, vacate defendants' termination decision, and remand for BCHA to reconsider the evidence and enter its findings, providing a rationale for any decision it makes on remand.

¶ 2                                    I. BACKGROUND

¶ 3        Plaintiff receives federal housing-assistance benefits under a voucher program administered by BCHA. Specifically, BCHA is a public housing authority (PHA) that receives funding from the United States Department of Housing and Urban Development (HUD). HUD provides rental subsidies (*i.e.*, vouchers) to BCHA, and BCHA pays landlords on behalf of the program's recipients so they can afford decent, safe, and sanitary housing in the private market. 24 C.F.R. § 982.1(a)(1) (2015). The voucher program is governed by HUD's regulations, codified in 24 C.F.R. Part 982 (Part 982). In addition, Part 982 requires each PHA to adopt a written administrative plan that establishes local policies for administering the program in accordance with HUD's requirements and that states the PHA's policies on those matters on which the PHA has been given discretion. 24 C.F.R. § 982.54(a) (2015).

¶ 4        In December 2015, plaintiff, who had no income, signed a statement of family obligations that includes a requirement that "the family must supply any information requested by the PHA or HUD for use in a regularly scheduled reexamination or interim reexamination of family income and composition." The statement of family obligations provides that the family must promptly notify the PHA when absent from the unit. BCHA's specific policy explains that "notice is required under this provision only when all family members will be absent from the unit for an extended period. An extended period is defined as any period greater than 30 calendar days. Written notice must be provided to the PHA at the start of the extended absence."

¶ 5        On February 1, 2017, BCHA sent plaintiff notice that, effective March 31, 2017, it would terminate her housing-assistance benefits, stating:

>        "Your annual reexamination notice was sent on 1/4/17 scheduling your appointment for 1/18/17 at 9:15. You did not call or attend the appointment. On 1/18/17 a final notice scheduling you for your annual reexamination was mailed out scheduling your appointment for 2/1/17 [at] 10:00. You did not call or attend the appointment."

¶ 6        The notice identified legal grounds for the action. For context, we note that Part 982 lists circumstances that *require* termination of assistance. 24 C.F.R. § 982.552(b) (2015). In addition, Part 982 lists grounds on which a PHA has the *authority* to terminate assistance (24 C.F.R. § 982.552(c)(1) (2015)) as well as circumstances that the PHA may consider when determining whether to do so (24 C.F.R. § 982.552(c)(2) (2015)).

¶ 7        The notice of termination that BCHA sent to plaintiff referenced section 982.552(c), *i.e.*, the "Other Authorized Reasons for Termination of Assistance," as the legal grounds for the termination. The notice explained that HUD permitted BCHA to terminate assistance under "other" (*i.e.*, not mandatory) circumstances and that it left to BCHA's discretion "whether such

circumstances in general warrant *consideration* for the termination of assistance." (Emphasis added.) The notice referenced BCHA's policy that it "will terminate" assistance if "the family has failed to comply with any family obligations," including the obligation to supply any information requested by the PHA or HUD for use in a regularly scheduled reexamination of family income. 24 C.F.R. § 982.551 (2015). Further, citing regulations concerning reexaminations generally (24 C.F.R. § 982.516 (2015)), the notice stated that a family is generally required to participate in an annual reexamination interview and that "if a family fails to attend two scheduled interviews without PHA approval *** a notice of termination will be sent to the family's address of record." The notice concluded that, if plaintiff disagreed with the decision, she had the right to request an informal hearing before an impartial hearing officer. At the hearing, she would have the right to an attorney and to present evidence.

¶ 8                                    A. BCHA Hearing Decision

¶ 9        On February 8, 2017, only one week after she missed the February 1, 2017, appointment, plaintiff, on her own initiative, called BCHA to discuss a separate matter. She then learned that her benefits were being terminated. Plaintiff requested a hearing and explained that she was unable to reply to the notices of reexamination because she was unable to receive her mail for a period.

¶ 10       The hearing was held before Davis on March 1, 2017. Plaintiff represented herself. Kristin Andrews appeared on BCHA's behalf. The hearing was not recorded.

¶ 11       On March 14, 2017, in a written order, Davis upheld the termination. The order stated that, "having fully considered the entire record, the undersigned Hearing Officer enters the following findings of Fact, Conclusions of Law and Decision." The findings of fact stated:

"1. Ms. Andrews presented:

01/04/17 Annual Recertification letter scheduling a 01/18/17 appointment with a written note '01/18/17 No Call, No Show KA'

01/18/17 Final Notice, Annual Recertification letter scheduling a 02/01/17 appointment with a written note 'No Call, No Show KA'

12/09/15—State of Family Obligations (signed by [plaintiff])

02/01/17—Tenant Notification of Termination of Program Assistance and Housing Assistance Payment Contract (Tenant Noncompliance)

Ms. Andrews explained that notices are sent out 120 days prior to annual recertification to allow time to get verifications back and calculate rent properly. Failure to timely recertify participants, [*sic*] affects funding and possibly loss of monies.

2. [Plaintiff] said she was out of town in January. She had a cousin that was ill and passed away. [Plaintiff] said the ride she usually has (her mother), [*sic*] car was towed and all her belongings were in the car and she was unable to retrieve them. The items in the car were her identification and keys. [Plaintiff] presented:

01/01/17—Illinois Traffic Crash Report

01/05/17—City of Elgin System tow receipt

01/08/17—Obituary for Linda Kaye Johnson

3. [Plaintiff] stated she called 02/08/17 to inquire about porting and found out about the termination. [Plaintiff] said she was unable to get her mail for an extended period of time due to her not having identification.

4. Ms. Andrews asked how long [plaintiff] was without her keys. Also asked why she did not contact someone to get her entry into her unit and possibly get her mail. [Plaintiff] said she did not have her landlord[']s number and did not think to call the Housing Authority. Therefore entry to her unit and retrieving mail did not occur in a timely fashion."

¶ 12    The order provided "conclusions of law," stating, in their entirety:

"1.The Housing Authority's decision to terminate was in accordance with the law, HUD regulations and the Housing Authority's policies."

Accordingly, Davis upheld BCHA's decision to terminate plaintiff's housing benefits.

¶ 13                                B. Trial Court Decision

¶ 14    Plaintiff filed a complaint requesting that the trial court review the order approving the termination of her benefits. The parties presented a bystander's report of the BCHA hearing, slightly elaborating on the evidence that had been presented. The bystander's report reflects:

"5. Kristin Andrews also explained that notices are sent out approximately 120 days prior to annual recertification effective date to allow time to get verifications back and calculate rent properly. Ms. Andrews also explained that, pursuant to the tenant's Lease Agreement and Statement of Family Obligations, tenants are responsible for timely supplying any information requested by the housing authority for use in regularly scheduled re-examinations, including information regarding family income and composition and that tenants are obligated to cooperate with housing authority in conducting said re-examinations. Failure to timely recertify participants, affects funding and possibly loss of monies and a tenant's failure to cooperate with a housing authority in the re-examination process is a breach of the Lease Agreement and Statement of Family Obligations.

6. Kristin Andrews asked how long [plaintiff] was without keys and why she didn't contact the landlord or someone to get entry to her unit and get her mail. Kristin Andrews also stated that the BCHA would have provided landlord telephone number to [plaintiff] in order for [plaintiff] to access unit and mailbox. The January 4, 2017[,] and January 8, 2017[,] annual recertification letters include the telephone and fax number for the BCHA, as well as the telephone numbers of Kristin Andrews and Christine Coon.

7. Kristin Andrews said her biggest concern is that it doesn't seem like [plaintiff] lives at her house based upon [plaintiff] not having access for approximately 1 month.

8. [Plaintiff] [p]resented the following information:

a. 1-5-17- Illinois Traffic Crash report

b. 1-5-17- City of Elgin System Tow Receipt

c. 1-8-17- Obituary for Linda Kaye Johnson

9. [Plaintiff] told the housing authority the following information:

a. She was out of town when the recertification letters were sent because her cousin passed away from lupus, she had to go to the funeral because it's her family.

b. She was trying to be there for her family, she was in Elgin at her mother's house, her car got towed, and she didn't have a ride. She doesn't have a car and relies on her mom for a ride.

c. Her purse with her ID, house keys, and mail keys were in her mom's car. Her mom's car was then in an accident with someone else driving and was towed after she got to Elgin.

d. The police were investigating the accident and wouldn't let her mom get anything out of the car.

e. She couldn't get back home from Elgin without a ride from her mother.

f. She didn't have keys for her unit or mailbox to get her mail at the time the housing authority sent the letters.

g. She only found out about her [S]ection 8 termination because she called the housing authority to ask about porting out on February 8, 2017[,] and was told by the housing authority, via Ms. Andrews, that she was in the process of losing her Section 8. When [plaintiff] spoke with Ms. Andrews, she was told by Ms. Andrews about the termination notice being sent out and Ms. Andrews also informed [plaintiff] of the process to request a hearing.

h. She came back home in early February around February 4th. She went to the post office around that time to ask about getting her mail out of the post office box. She didn't think the post office would give her the mail since she didn't have her ID.

i. She stated she did not have her landlord's phone number and couldn't contact the landlord.

j. She said the housing authority is only open once a week and she didn't have the chance to call. Ms. Andrews informed [plaintiff] that the BCHA has voicemail and all calls are forwarded to other housing authority offices every day of the week except Wednesdays."

¶ 15 Plaintiff's exhibits appear in the record. The obituary for Linda Kaye Johnson reflects that the service was held in Elgin on Sunday, January 8, 2017. The crash report lists the name of the vehicle owner as Patricia Stewart and the driver as Keyon Stewart.

¶ 16 Plaintiff also moved to stay BCHA's termination decision, attesting that she has no income and stating, "if I am evicted, and do not receive continuing benefits through BCHA I do not have anywhere else to live and will likely become homeless." On April 11, 2017, in an agreed order, the trial court granted the stay and ordered BCHA to immediately reinstate plaintiff's benefits, pending final resolution of the case.

¶ 17 On December 21, 2017, the trial court denied plaintiff's complaint and affirmed BCHA's decision. Plaintiff appeals.

¶ 18                                             II. ANALYSIS

¶ 19 On appeal, plaintiff argues that defendants failed to consider her individual circumstances in the discretionary termination of her benefits, instead improperly treating the termination as mandatory. She notes that the order failed to state the *reasons* for the decision, gave no indication that her circumstances and explanation for the violation were considered, and did

not reflect that Davis even knew that BCHA had discretion as to whether to terminate her benefits. Plaintiff argues that, "[w]ith no indication that [Davis] considered [plaintiff's extenuating circumstances], the distinction between mandatory and discretionary terminations is rendered meaningless." Further, plaintiff argues that the termination was overly harsh and arbitrary, where the evidence showed that she did not receive the two reexamination notices and that, as soon as she became aware of the need for information, she apologized and offered to supply it. Plaintiff asserts that there was only a *one-week delay* between the second hearing date and the date that she contacted BCHA, which, she notes, is open only one day each week. As such, plaintiff requests that we reverse BCHA's decision and direct BCHA to restore her benefits.

¶ 20    Defendants, in turn, assert that the termination was mandatory under BCHA's administrative plan. Alternatively, defendants argue that, even if the termination were discretionary, the factual findings contained in the hearing decision reflect that all relevant circumstances were considered "despite the fact that plaintiff's failure to comply with family obligations under the [program] was a mandatory termination." For the following reasons, we reverse the trial court, vacate the termination decision, and remand for BCHA to reconsider the evidence and enter its findings.

¶ 21                                    A. Standard of Review

¶ 22    The appeal of a trial court's ruling on a petition for *certiorari* seeking review of an administrative decision is treated the same as any other appeal for administrative review. *Lipscomb v. Housing Authority*, 2015 IL App (1st) 142793, ¶¶ 11-16. Specifically, we review the decision of the administrative agency, not the decision of the trial court, and the record only of the administrative proceedings. *Id.* ¶ 11. "The applicable standard of review, which determines the degree of deference given to the agency's decision, depends upon whether the question presented is one of fact, one of law, or a mixed question of law and fact." *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 390 (2001). Factual findings are reviewed under the manifest-weight-of-the-evidence standard, whereas a purely legal question demands *de novo* review. *Lipscomb*, 2015 IL App (1st) 142793, ¶ 16. However, where an agency's decision involves a mixed question of law and fact, we will not reverse unless the decision is clearly erroneous, *i.e.*, when we are left with a definite and firm conviction that a mistake has been committed. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 211 (2008). "Mixed questions of fact and law are questions in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated." (Internal quotation marks omitted.) *Id.*

¶ 23    Plaintiff's arguments require us to answer two primary questions: (1) whether the termination of her benefits was mandatory or discretionary and, (2) if discretionary, whether Davis considered relevant circumstances prior to terminating plaintiff's benefits. The first issue is a purely legal question, which we review *de novo*, whereas the second issue involves the legal effect of a given set of facts and the "clearly erroneous" standard of review. *Lipscomb*, 2015 IL App (1st) 142793, ¶ 16.

**B. Termination of Benefits: Mandatory or Discretionary**

¶ 25     Defendants assert that the termination was mandatory. In our view, however, the termination was clearly discretionary.

¶ 26     As previously noted, mandatory terminations are described in section 552(b) of Part 982 (24 C.F.R. § 982.552(b) (2015)). This is *not* the section under which BCHA pursued the termination of plaintiff's benefits. Rather, BCHA explicitly stated in its notice of termination that the legal grounds for the termination fell under section 552(c) of Part 982 (24 C.F.R. § 982.552(c) (2015)), which, it further explained, gave BCHA the *authority* to terminate, in its discretion. Indeed, section 552(c)(1)(i) provides that a PHA has the authority and "may" terminate benefits if any family obligations are violated. 24 C.F.R. § 982.552(c)(1)(i) (2015). Thus, Part 982 clearly did not mandate the termination of plaintiff's benefits.

¶ 27     BCHA nevertheless contends that the termination was mandated by its own administrative plan. Noting that Part 982 authorizes a PHA to establish local policies to administer those matters for which the PHA has discretion, BCHA asserts that it exercised its discretion within the plan by deciding that a failure to meet family obligations mandates termination. Specifically, BCHA points to the plan's language providing that "[t]he PHA *will* terminate a family's assistance" (emphasis added) if certain circumstances occur (listing 10), including "[t]he family has failed to comply with any family obligations under the program."

¶ 28     A broader review of BCHA's administrative plan, however, requires us to reject this argument. Sections of the plan must be read as a whole, so no part is rendered meaningless or superfluous. See *Gaston v. Chac, Inc.*, 375 Ill. App. 3d 16, 24 (2007). We initially note that, like Part 982, the plan separates mandatory and discretionary terminations into different sections. The plan lists, in section 12-I.D., "Mandatory Termination of Assistance." Again, this is *not* where the grounds for the termination of plaintiff's benefits allegedly fell. Rather, plaintiff's benefits were terminated under section 12-I.E., "Mandatory Polices and Other Authorized Terminations." Section 12-I.E. is further divided, with the grounds for plaintiff's termination falling under the subsection concerning "Other Authorized Terminations." After an introductory paragraph again explaining that HUD permits BCHA to consider, in its discretion, whether circumstances warrant "*consideration* for the termination of assistance" (emphasis added), the policy does state that termination "will" occur for 10 enumerated infractions. Critically, however, this statement is then *qualified*, with the following language appearing at the end of the subsection:

> "In making its decision to terminate assistance, the PHA *will* consider alternatives as described in Section 12-II.C and other factors described in Sections 12-II.D and 12-II.E. *Upon consideration of such alternatives and factors*, the PHA *may*, on a case-by-case basis, choose *not* to terminate assistance." (Emphases added.)

¶ 29     In turn, section 12-II.D. lists "criteria for deciding to terminate assistance." Each subsection provides first the relevant citation to Part 982 and then the specific policy that BCHA has adopted in relation thereto. The subsection relevant here references section 552(c)(2)(i) of Part 982, which provides that a PHA may consider all relevant circumstances, such as the seriousness of the case. BCHA's administrative plan does insert a limitation, stating: "The PHA is permitted, *but not required*, to consider all relevant circumstances when determining whether a family's assistance should be terminated." (Emphasis added.) Nevertheless, the plan next provides, as "PHA Policy," that "[t]he PHA *will* consider the following factors when making its decision to terminate assistance" (emphasis added),

including the seriousness of the case (as well as factors such as "the length of time since the violation occurred, the family's recent history and the likelihood of favorable conduct in the future, if the family reported to the PHA within 10 business days of arrest or conviction").

¶ 30    As previously noted, a PHA must adopt a written administrative plan that establishes local policies for matters within the PHA's discretion, but those polices must be in accordance with HUD's regulations and requirements. 24 C.F.R. § 982.54(a) (2015). The administrative plan here, as described above, conforms with Part 982, as it provides that alternatives and factors "will" be considered before a discretionary termination decision is rendered. Indeed, as further described below, this interpretation is also consistent with the decisions in *Gaston* and *Lipscomb*, both of which considered discretionary terminations and held that relevant circumstances must first be considered or the distinction between mandatory and discretionary terminations is meaningless. See *Lipscomb*, 2015 IL App (1st) 142793, ¶ 28; *Gaston*, 375 Ill. App. 3d at 24. Accordingly, although defendants repeatedly contend that BCHA's administrative plan *mandated* termination here, this interpretation is contrary to the plain language of the plan, when read as a whole. *Gaston*, 375 Ill. App. 3d at 24. The notice of termination, Part 982, and the administrative plan clearly reflect that plaintiff's termination did not fall under the mandatory termination provisions but, rather, fell into the category of an "authorized termination," requiring the application of discretion and the consideration of relevant circumstances.

¶ 31                                C. Application of Discretion

¶ 32    Having determined that the termination of plaintiff's benefits was not mandatory under Part 982 or BCHA's administrative plan, we consider whether the record reflects that the termination decision was the result of an exercise of discretion.

¶ 33    We note first that, in its provisions addressing hearing procedures, Part 982 requires that "[t]he person who conducts the hearing must issue a written decision, stating briefly the *reasons* for the decision." (Emphasis added.) 24 C.F.R. § 982.555(e)(6) (2015). Here, the order reflects that, after considering the record, Davis made findings of fact, but they amount only to a recitation of the evidence presented. The conclusion of law cursorily upheld the termination, without providing any *reasons* for the decision, in light of the evidence that was presented. Based on the evidence presented, there is no dispute that there was a technical violation of the family obligations (assuming that knowledge and intent are irrelevant to finding this type of violation), but the issue here was the appropriate consequence, if any, for that violation, in light of all relevant circumstances and given that a termination was discretionary. In that regard, there is nothing in the order reflecting that Davis knew or appreciated that she had discretion *not* to terminate, or that her decision to terminate resulted from consideration and application of the factors prescribed within BCHA's administrative plan.

¶ 34    Our decision is consistent with the decisions in *Lipscomb* and *Gaston*. There, distinguishing between mandatory and discretionary terminations under Part 982, the courts held that "a discretionary termination of benefits under subsection (c) [(24 C.F.R. § 982.552(c) (2015))] *requires* the agency to consider these 'relevant circumstances' [(24 C.F.R. § 982.552(c)(2)(i) (2015))] before making its determination." (Emphasis added.) *Lipscomb*, 2015 IL App (1st) 142793, ¶ 25 (citing *Gaston*, 375 Ill. App. 3d at 24). The courts noted that failing to consider relevant circumstances before making a termination decision renders meaningless any distinction between mandatory and discretionary terminations and that it is

not sufficient, in a discretionary termination, for the hearing officer to simply summarize the evidence and announce a decision without providing any *reasons* for exercising his or her discretion in favor of termination. See *Id.* ¶ 28; *Gaston*, 375 Ill. App. 3d at 24.

¶ 35     We reject defendants' attempts to distinguish *Gaston* and *Lipscomb* on factual bases. Their relevance here concerns the importance of distinguishing between mandatory and discretionary terminations and, in the latter instance, providing reasons for the decision and an indication that relevant circumstances were considered. Further, although defendants note that it is not clear in *Gaston* or *Lipscomb* whether the administrative plan would have classified the termination as mandatory, we have rejected defendants' contention that the termination here was mandatory, and therefore, this argument is irrelevant.

¶ 36     We further disagree with defendants' argument that, because the hearing decision referenced "plaintiff's purported basis for failing to reschedule and appear," as well as evidence presented by BCHA, the basis for the termination is clearly evident for our review. The decision lacked any rationale connecting the recited evidence to the ultimate conclusion, nor did it even state with *which* "law, HUD regulations and the Housing Authority's policies" the decision complied. Part 982 and case law clearly require *reasons* for the decision. 24 C.F.R. § 982.555(e)(6) (2015); *Lipscomb*, 2015 IL App (1st) 142793, ¶ 28; *Gaston*, 375 Ill. App. 3d at 24. To make judicial review meaningful, an administrative decisionmaker must articulate the rationale for the decision made, based on the facts found. See, *e.g.*, *Medina Nursing Center, Inc. v. Health Facilities & Services Review Board*, 2013 IL App (4th) 120554, ¶¶ 23-27 (noting that a conclusion reflecting a "robotic declaration" of compliance with applicable standards "is worthless for purposes of judicial review"). Where findings are lacking, the case must be remanded for further proceedings and to allow the administrative body to enter its findings. See, *e.g.*, *Lipscomb*, 2015 IL App (1st) 142793, ¶ 28.

¶ 37     Defendants also contend that the inclusion of the evidence in the hearing decision reflects that Davis considered it. We do not agree that we can infer from the order's summary of the evidence that Davis applied the relevant factors in a discretionary manner. In other words, where defendants' primary position is that the termination was *mandatory*, there is no basis for us to simply *assume* that Davis knew otherwise when issuing the decision. Again, the order summarized the evidence presented but included no explanation for how that evidence was considered or why, despite plaintiff's explanation and evidence in support thereof for the technical violation, Davis rejected any alternative to the termination. Thus, we cannot ascertain that Davis even knew or appreciated that termination was not mandatory.

¶ 38     To be clear, Part 982 requires only that the hearing officer state "briefly" the reasons for the decision (24 C.F.R. § 982.555(e)(6) (2015)), and we are not holding that an elaborate decision must be issued. However, where a termination is mandatory, the decision should so state. Where a termination is discretionary, the decision should reflect the hearing officer's rationale for choosing termination over any alternative, based on the relevant circumstances. In contrast, here, we have *no* rationale for the decision to terminate. This absence, combined with the faulty position that the termination was mandatory, requires us to remand for the entry of a decision, based on the relevant circumstances, that explains what consequence is chosen and why.

¶ 39     In sum, as no reasons for the termination decision were provided, the termination of benefits here does not reflect that it resulted from an exercise of discretion, rendered after a consideration of the relevant circumstances; therefore, the decision was clearly erroneous. See,

*e.g.*, *Lipscomb*, 2015 IL App (1st) 142793, ¶ 16. We reverse the trial court, vacate BCHA's termination decision, and remand for BCHA to reconsider the evidence and enter its findings, providing a rationale for any decision it makes on remand.

¶ 40                                          III. CONCLUSION

¶ 41          For the reasons stated, the judgment of the circuit court of Boone County is reversed, and the cause is remanded with directions.

¶ 42          Reversed and remanded with directions.