2023 IL App (2d) 220448-U
No. 2-22-0448
Order filed June 30, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| SEHIGHYA SMITH, | ) | Appeal from the Circuit Court |
| | ) | of McHenry County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 22-MR-46 |
| | ) | |
| McHENRY COUNTY HOUSING | ) | |
| AUTHORITY and KIM ULBRICH, | ) | |
| in Her Official Capacity as Executive | ) | |
| Director of the McHenry County Housing | ) | |
| Authority, | ) | Honorable |
| | ) | Kevin G. Costello, |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Justices Hutchinson and Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*:  (1) Housing authority's decision to terminate plaintiff's benefits was not against the manifest weight of the evidence where the record clearly showed that plaintiff persistently failed to submit documentation required for her eligibility review. (2) Plaintiff forfeited her claim that the housing authority harassed and stalked her, and, in any event, the claim lacked merit.

¶ 2    Plaintiff, Sehighya Smith, appeals the judgment of the McHenry County circuit court affirming the decision of the McHenry County Housing Authority (MCHA) to terminate her housing benefits for her failure to provide required documentation during a review of her eligibility

for benefits. Because the decision to terminate was not against the manifest weight of the evidence, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      Plaintiff received federal housing-assistance benefits under a voucher program administered by MCHA. MCHA is a public housing authority (PHA) that receives funding from the United States Department of Housing and Urban Development (HUD). HUD provides MCHA with rental subsidies (*i.e.*, vouchers), which MCHA distributes to landlords on behalf of the program's recipients so they can afford decent, safe, and sanitary housing in the private market. See 42 U.S.C. § 1437f(C)(4), (o)(1)(A) (2018). The voucher program is governed by HUD's regulations, codified in 24 C.F.R. Pt. 982 (2021) (Part 982). Additionally, Part 982 requires each PHA to "adopt a written administrative plan that establishes local policies for administration of the program in accordance with HUD requirements." 24 C.F.R. § 982.54(a) (2021). In particular, the administrative plan must "state[ ] PHA policy on matters for which the PHA has discretion to establish local policies." 24 C.F.R. § 982.54(a) (2021).

¶ 5      In August 2019, plaintiff was admitted to the voucher program. As part of an annual review in August 2020, plaintiff submitted a nonincome affidavit averring that she had no income from any source, including wages, child support, social security, unemployment, or any other source of government aid. However, she failed to complete and submit all documents required for participation under the zero-income option of the voucher program. On August 31, 2020, MCHA sent plaintiff a letter (1) notifying her that her benefits were terminated for her failure to submit the required documentation and (2) advising her of her right to an informal hearing. Eventually, the issue was resolved, and MCHA did not terminate plaintiff from the voucher program in 2020.

¶ 6   Because plaintiff reported zero income during her August 2020 annual review, she was thereafter required to participate in a semiannual zero-income review. As part of the semiannual review, MCHA required plaintiff to submit documentation verifying her lack of income. Failure to participate in the semiannual review could result in plaintiff's termination from the voucher program.

¶ 7   On January 8, 2021, MCHA mailed plaintiff a letter notifying her of the semiannual review of her zero-income status. The letter provided a list of the documents she was required to complete and return, including verification and consent forms, a nonincome affidavit, a personal declaration, and an applicant/tenant certification form. The letter asked plaintiff to return the required documents no later than January 29, 2021. The letter also reminded plaintiff that failure to return the documents might result in her termination from the voucher program.

¶ 8   On February 2, 2021, an MCHA caseworker made a follow-up telephone call to plaintiff. The caseworker left a voicemail reminding plaintiff of the need to submit the zero-income documentation.

¶ 9   Because plaintiff did not contact MCHA or submit the documentation, MCHA sent plaintiff a letter on February 24, 2021, advising her that she was terminated from the voucher program for "[f]ailure to fulfill family obligations by failing to submit necessary documentation for [her] 6[-]month zero[-]income recertification as required." The letter advised defendant that she had the right to an informal hearing on MCHA's decision if she requested it by March 6, 2021.

¶ 10   On March 1, 2021, MCHA received plaintiff's request for an informal hearing. On March 2, 2021, Karen Seager, MCHA's section 8 coordinator, emailed plaintiff and explained that MCHA would be willing to vacate the termination of benefits if plaintiff completed the zero-income review, including all requested documentation, by March 12, 2021. Seager's email included forms

for plaintiff to complete: a personal declaration, a nonincome affidavit, and an applicant/tenant certification. She also requested that plaintiff submit three months of current checking account statements and two months of current utility bills. Seager further included a list of documents plaintiff needed to submit so that MCHA could calculate her income, assets, and deductions. Seager advised plaintiff to carefully review the list. Seager also asked plaintiff not to leave any parts of the forms blank and to sign and put full dates on all paperwork. Finally, she advised plaintiff that MCHA would schedule an informal hearing if it did not receive all required paperwork by March 12, 2021.

¶ 11    On March 11, 2021, as part of a prehearing review, MCHA obtained information from the Illinois Department of Human Services (DHS) that, in August 2020, plaintiff started receiving Temporary Assistance for Needy Families (TANF) benefits and had been receiving $431 in monthly TANF benefits since September 2020. The participants in the review were Seager, Kim Ulbrich (MCHA's executive director), and Holly Lyons (MCHA's deputy director). The factors they considered were the "[s]eriousness of the [c]ase[,]" the "[e]xtant [*sic*] of participation or culpability of individual family members[.]" "[m]itigating circumstances related to the disability of a family member[,]" and "[t]he effect of denial or termination of assistance on other family members who were not involved in the action or failure[.]" See 24 C.F.R. § 982.552(c)(2)(i) (2021). The review participants agreed that if plaintiff did not complete and submit the required documentation by 4 p.m. on March 12, 2021, MCHA would proceed with the termination of benefits.

¶ 12    On March 12, 2021, MCHA received an email from plaintiff that included the personal declaration, the nonincome affidavit, and the applicant/tenant certification. Plaintiff included no other documentation with the email.

¶ 13    Later that same day, Seager advised plaintiff by email that she had failed to complete the employer section of the personal declaration and still needed to submit three months of current bank statements, two months of current utility bills, and documentation of her TANF benefits.  As in the March 2, 2021, email, Seager attached a list of documents plaintiff would need to submit for MCHA to calculate her income, assets, or deductions.  She again advised plaintiff to carefully review the list.  She further told plaintiff that if MCHA did not receive her completed personal declaration and other required documentation by 4 p.m. that day, MCHA would hold an informal hearing on March 23, 2021.

¶ 14    On March 14, 2021, MCHA received an email from plaintiff with two months of electric bills, one month of gas bills, and two months of bank statements.  Plaintiff stated that she would not complete the employer section of her personal declaration or submit any documentation regarding her TANF benefits.

¶ 15    On March 23, 2021, an informal hearing was held before hearing officer Melissa Taylor.  Seagar testified that MCHA sought termination of benefits for plaintiff's violation of "family obligations" under section 982.551 (24 C.F.R. § 982.551 (2021)).  Under section 982.551(b)(2), a "participant family" under the voucher program "must supply any information requested by the PHA or HUD for use in a regularly scheduled reexamination or interim reexamination of family income and composition in accordance with HUD requirements."  24 C.F.R. § 982.551(b)(2) (2021).  Seagar explained that MCHA terminated plaintiff from the voucher program because she failed to provide all documentation MCHA sought under section 982.551(b)(2).

¶ 16    In her testimony, plaintiff agreed that Seager's version of events "did happen."  According to plaintiff, she submitted on March 12, 2021, all documentation she had available.  In response, Seager testified that there was still paperwork outstanding.  According to Seager, plaintiff needed

to amend her personal declaration, submit documentation regarding her TANF benefits, and provide another month of bank statements.

¶ 17    The hearing officer submitted a written order upholding MCHA's termination of plaintiff from the voucher program. The officer found that plaintiff had failed to provide or complete all required documentation and had no intention of completing and supplying those documents. The officer also noted that she had reviewed MCHA's evidence and considered (1) "[t]he seriousness of the case," (2) "[t]he effect that denial of assistance may have on the other member of the family [*i.e.*, plaintiff's minor child] who was not involved in the action or failure to act," and (3) "[t]he effect [that denial of assistance] will have on [plaintiff], the displacement of said [plaintiff,] and the potential of any future housing for [plaintiff's] family." See 24 C.F.R. § 982.552(c)(2)(i) (2021).

¶ 18    Plaintiff then filed a complaint in the circuit court of McHenry County for a writ of *certiorari*, seeking review of the order approving the termination of her voucher benefits. The complaint alleged that the plaintiff had been evicted from her apartment because of the termination. The complaint further alleged that plaintiff had provided all documents required to determine eligibility and that the hearing officer's decision was against the manifest weight of the evidence. Plaintiff asked the trial court to reverse MCHA's termination of her benefits.

¶ 19    In a written order, the trial court affirmed the decision to terminate benefits. The court noted that it had considered the record of the administrative proceeding and the parties' oral arguments. The court found that the record contradicted plaintiff's claim that she had complied with program requirements. The court further noted that plaintiff (1) failed to provide any documentation regarding her TANF benefits and (2) falsely stated in her nonincome affidavit that

she was not receiving TANF benefits. The court commented that MCHA's decision to terminate plaintiff's benefits "was not done lightly" and was amply supported by the record.

¶ 20    Plaintiff, in turn, filed this timely appeal.

¶ 21                                    II. ANALYSIS

¶ 22    On appeal, plaintiff contends, *pro se*, that we should (1) reverse MCHA's decision to terminate her voucher benefits and (2) grant her financial compensation for "stress, humiliation, pain, [and] suffering" caused by MCHA's "abuse, stalking[,] and harassment."

¶ 23    "The appeal of a trial court's ruling on a petition for *certiorari* seeking review of an administrative decision is treated the same way as any other appeal for administrative review." *Stewart v. Boone County Housing Authority*, 2018 IL App (2d) 180052, ¶ 22. "Specifically, we review the decision of the administrative agency, not the decision of the trial court, and the record only of the administrative proceedings." *Stewart*, 2018 IL App (2d) 180052, ¶ 22. The applicable standard of review, which determines the degree of deference given to the agency's decision, depends upon whether the question presented is one of fact, one of law, or a mixed question of fact and law. *Stewart*, 2018 IL App (2d) 180052, ¶ 22. An administrative agency's factual findings are considered *prima facie* true and correct (*Mireless v. Dart*, 2023 IL App (1st) 221090, ¶ 56) and are disturbed only if they are against the manifest weight of the evidence (*Stewart*, 2018 IL App (2d) 180052, ¶ 22). A factual finding is against the manifest weight of the evidence only where the opposite conclusion is clearly apparent. *Beggs v. Board of Education of Murphysboro Community Unit School District No. 186*, 2016 IL 120236, ¶ 50.

¶ 24    Here, the evidence clearly established that plaintiff failed to supply the documentation MCHA required for the semiannual review of plaintiff's eligibility for benefits. Despite proper notice and several opportunities to comply, plaintiff submitted only some of the required

information. After plaintiff's initial failure, MCHA made clear to plaintiff that it would terminate her benefits if she failed to submit the required documents. Nonetheless, MCHA gave plaintiff another opportunity to provide the information. Although plaintiff submitted some of the information, she expressly refused to complete the employer section of the personal declaration and to submit documents related to her TANF benefits. She also failed to provide the needed banking statements and utility bills. Her failures justified MCHA's termination of her voucher benefits.[1] Thus, the hearing officer's decision upholding the termination of plaintiff's voucher benefits was not against the manifest weight of the evidence.

¶ 25    We further note that plaintiff exhibited a pattern of failing to comply with MCHA's requests for documentation. Her original failure was during the annual review in August 2020. After MCHA advised her in August 2020 of its intent to terminate her from the voucher program, plaintiff eventually complied. Again, in 2021, when plaintiff balked at submitting completed forms, MCHA gave plaintiff every opportunity to comply, yet she persistently refused. Her

---

[1]We note that it appears that MCHA sought discretionary as opposed to mandatory termination. See *Stewart*, 2018 IL App (2d) 180052, ¶ 26 (comparing mandatory and discretionary termination under Part 982 (24 C.F.R. Pt. 928 (2021)). However, plaintiff raises no issue in that regard. We nonetheless observe that, in rendering her decision, the hearing officer considered factors bearing on discretionary termination, such as (1) "[t]he seriousness of the case," (2) "[t]he effect that denial of assistance may have on the other member of the family [*i.e.*, plaintiff's minor child] who was not involved in the action or failure to act," and (3) "[t]he effect [that denial of assistance] will have on [plaintiff], the displacement of [plaintiff,] and the potential of any future housing for [plaintiff's] family." See 24 C.F.R. § 982.552(c)(2)(i) (2021).

repeated and willful failure to comply with the voucher program's requirements further justified her termination.

¶ 26   As for plaintiff's other appellate contention—that she is entitled to money damages for MCHA's conduct—we note that she did not allege such a claim in her complaint or otherwise pursue such relief in the trial court.  Thus, she forfeited the issue.  See *Moore v. Board of Education of the City of Chicago*, 2016 IL App (1st) 133148, ¶ 35 (issues raised for first time on appeal are forfeited).  Even if we were to address the issue's merits, there is no evidence in the record to support any claim that MCHA harassed, stalked, or otherwise injured plaintiff.

¶ 27                                III. CONCLUSION

¶ 28   For the reasons stated, we affirm the judgment of the circuit court of McHenry County.

¶ 29   Affirmed.