**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 220525-U

Order filed November 6, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| DANIEL WALKER, | ) | Appeal from the Circuit Court |
| | ) | of the 18th Judicial Circuit, |
| Plaintiff-Appellant, | ) | Du Page County, Illinois. |
| | ) | |
| v. | ) | |
| | ) | |
| DU PAGE HOUSING AUTHORITY, a | ) | |
| municipal corporation, KENNETH E. COLES, | ) | Appeal No. 3-22-0525 |
| Executive Director of the Du Page Housing | ) | Circuit No. 22-MR-379 |
| Authority, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| (Du Page Housing Authority, | ) | The Honorable |
| | ) | Craig R. Belford |
| Defendant-Appellee). | ) | Judge, Presiding. |

_____

JUSTICE McDADE delivered the judgment of the court.
Presiding Justice Holdridge and Justice Peterson concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  (1) DHA did not violate due process by failing to provide proper notice about the basis for its decision to terminate the participant's housing assistance; (2) the Hearing Officer did not improperly rely on hearsay evidence alone to find that the program's rules had been violated; and (3) the Hearing Officer's decision did not fail to consider mitigating evidence because no mitigation was shown at the hearing.

¶ 2    Daniel Walker received a letter notifying him that his housing subsidy payments were being terminated by the Du Page Housing Authority (DHA) and requested an informal hearing. At that hearing, DHA presented documentary evidence showing that Walker had simultaneously leased and obtained housing benefits for two apartments. Walker denied living at the second apartment or even knowing its address. After reviewing the evidence, the Hearing Officer entered an order upholding DHA's decision to terminate the subsidy payments and requiring Walker to reimburse DHA for its duplicate payments. Walker now raises arguments challenging the propriety of the DHA notice and the evidentiary basis for the Hearing Officer's decision. We affirm.

¶ 3                                I. BACKGROUND

¶ 4    In 2021, Walker applied for rental assistance from the Housing Choice Voucher (HCV) Program, administered by DHA. On November 5, 2021, he leased an HCV unit located at 794 Inland Circle, #301, in Naperville, Illinois, for himself and his teenage son and began receiving DHA housing subsidy payments on his behalf. On March 31, 2022, DHA notified Walker of its intent to terminate his voucher assistance due to two alleged rule infractions: (1) his failure to supply DHA with required updates, specifically providing notice that a family member was no longer living in the unit; and (2) receipt of double subsidy payments on his behalf. Walker requested an informal hearing to review the decision, and a virtual hearing was held on April 28 before an administrative hearing officer, with Walker and DHA Program Manager Kristin Sartore present. According to Walker, DHA e-mailed him the documentary evidence it intended to present on the day of the hearing.

¶ 5    During the proceeding, DHA introduced a number of documents, including records of its subsidy payments on Walker's behalf and the applications and leases he signed that established

2

his rental history and notified him of his obligations under the HCV Program. The HUD Form 50059 Walker signed showed that he leased a second HCV unit with a move-in date of December 1, 2021, and did not list his son as a resident. The lease attached to that form provided the address of the second unit, located in the Greenleaf Apartments, and bore Walker's signature.

¶ 6      DHA first became aware that Walker was receiving double housing subsidies when a woman named "Renee" called from Greenleaf Apartments to inquire after seeing Walker's name on HUD's multiple subsidy list. Renee confirmed that Walker moved into the Greenleaf apartment on December 1, 2021, and was residing there alone because his son was away at school. She sent DHA a HUD Form 50059 signed by Walker that included the apartment lease. Based on that information, DHA ran an Enterprise Income Verification (EIV) report, which confirmed that Walker was receiving subsidies from DHA and National Housing for the two apartments. After HUD requested reimbursement for the duplicate payment, DHA sent Walker the letter notifying him of its intent to terminate his subsidy.

¶ 7      At the informal hearing on that notice, Walker argued that he did not know the address of the Greenleaf apartment because it was not on the double subsidy report. The Hearing Officer asked Walker where he was living, and he responded that he was in the Inland Circle apartment. DHA then explained to Walker that the EIV report showed only the two entities paying the subsidies, not the address of the units. The address of the Greenleaf apartment was shown on the lease attached to the HUD Form 50059 that Walker signed.

¶ 8      Walker objected to Sartore's testimony about the call from Renee of Greenleaf Apartments to DHA, arguing that Renee did not testify or submit a supporting affidavit. He continued to assert that he did not know the address of the Greenleaf apartment, and DHA again referred him to the HUD form that he signed. It also asked whether he had any documents to

show he did not move into the Greenleaf unit or that the HUD documents were falsified or incorrect. Walker stated that his only proof that he lived in the Inland Circle Apartment was his rent payment and lease for that unit. He did not offer any additional documents or witnesses.

¶ 9    When the Hearing Officer asked Walker whether he had a lease with Greenleaf Apartments, he repeatedly stated that he did not live there. After numerous attempts to obtain an answer about the lease, the Hearing Officer asked Walker, "Did you sign the lease at Greenleaf Apartments, yes or no?" and Walker responded, "Yes, I signed the lease[,] but I didn't move into that place. I don't live at that place." DHA and the Hearing Officer explained that even if Walker was not residing in the Greenleaf apartment, the problem that he was receiving subsidy payments for both that unit and the Inland Circle apartment remained. In response, Walker stated, "Yeah, but that was not intentional," without further explanation.

¶ 10   Walker then shifted the discussion to the amount of reimbursement DHA was seeking for its payments on the Inland Circle unit. He asked if the Hearing Officer had to determine whether he could afford that sum and stated that he had a teenage son who would graduate soon living with him. The Hearing Officer and DHA explained that there was no repayment deadline but his account on the HUD database would be flagged until the full amount was repaid.

¶ 11   After the hearing, the Hearing Officer submitted a written decision, restating what occurred at the hearing and listing the documents introduced by DHA. The order then concluded that based on the Hearing Officer's review of the evidence, "Mr. Danny Walker did lease up in a DHA HCV unit on 11/5/2021; and then leased in another unit with Greenleaf Apartments on 12/1/2021. He would not admit to signing the documents and that he had a lease with them too; and kept repeating he does not live there. However, he did not provide any documentation to dispute the HUD documents presented." The Hearing Officer found that, based on the duplicate

4

subsidy payments, DHA had grounds to immediately terminate Walker's participation in the Housing Choice Voucher program and require him to repay the $6480 in duplicate benefits paid on his behalf.

¶ 12    Because the agency had not adopted the Administrative Review Law and Walker had no other means of seeking review, he sought administrative review of the Hearing Officer's decision through a writ of *certiorari* filed in the Du Page County circuit court. 89 Ill. Adm. Code 510.120(c) (2003). After reviewing the parties' briefs, the trial court affirmed the Hearing Officer's decision. Walker filed a *pro se* appeal of that judgment in this court.[1]

¶ 13                                    II. ANALYSIS

¶ 14    Walker raises three issues on appeal: (1) whether the termination notice violated his due process rights by failing to provide adequate notice; (2) whether DHA improperly relied on hearsay alone to find that Walker violated the HCV Program rules; and (3) whether DHA failed to consider his mitigating evidence. The standards of review for addressing issues raised in a common law writ of *certiorari* mirror those in the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2022)). Our review is limited to the evidence submitted at the informal hearing, and we may not consider additional evidence. *Williams v. Department of Human Services Division of Rehabilitation Services,* 2019 IL App (1st) 181517, ¶ 19.

¶ 15    The applicable standard of review varies with the type of question presented. *Id.* ¶ 21. Because Walker raises mixed questions of fact and law, we must determine whether the Hearing Officer correctly applied the law to the particular facts of this case. We review mixed questions for clear error, a highly deferential standard. *Id.* ¶ 22. An agency's decision is clearly erroneous

---

[1] DHA filed an emergency motion to dismiss the appeal, which this court took with the case. We now deny that motion as moot.

only if, after considering the record in its entirety, we are "left with the ' "definite and firm conviction that a mistake has been committed." ' " *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 211 (2008) (quoting *AFM Messenger*, 198 Ill. 2d 380, 395 (2001), quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

¶ 16                                                      A. Notice

¶ 17        Walker first argues that DHA failed to give him proper notice because it did not provide enough information for him to prepare a defense, in violation of his due process rights. He maintains that he was not informed prior to the hearing of the address of the Greenleaf apartment he leased, the dates he was allegedly absent from his Inland Circle apartment, and the contact information for the management of Greenleaf Apartments, which was receiving HUD subsidy payments. Without that information, he could not prepare rebuttal evidence or properly defend against DHA's allegations.

¶ 18        DHA's letter of intent to terminate informed Walker of two allegations. The first was that he failed to fulfill his "obligations of family" by not informing DHA that he had moved from the Inland Circle unit, citing 24 C.F.R. 982.551 (2016). The second was that he violated his program obligations under 24 C.F.R. 982.552 (2016) by applying for and receiving a double housing subsidy. Walker admits that he received the letter but claims he learned the details of those allegations at the hearing, which precluded him from preparing a defense.

¶ 19        Based on Walker's participation at the informal hearing, it is apparent that he had prior access to the documents presented by DHA. At the outset of the hearing, the Hearing Officer explained what would happen:

          "The way that an informal hearing is done is that the *Housing Authority*

          *will present the documents of the email that you received, there is a*

6

*summary page that you can follow,* and they will go through each of the documents. Once they conclude going through the documents, then you have the opportunity to ask questions; and if you had anything else that you were presenting as your evidence, that is required for the informal hearing to move forward. Okay?" (Emphasis added.)

Walker answered, "Yes" and never mentioned DHA's alleged failure to send the documents before the hearing. In addition, he repeatedly argued that the documents were missing critical information, including the location and contact information for the Greenleaf apartment, strongly suggesting that he had reviewed them prior to the hearing.

¶ 20        Moreover, the DHA notification letter stated:

"*You have the right, upon appointment in advance, to examine DHA documents directly relevant to the denial of your application.* The DuPage Housing Authority must also be given the opportunity to examine any family documents that are relevant to the hearing. If the family does not make the documents available for examination on the request of DHA, the family may not rely on the document at the hearing." (Emphasis added.)

Walker does not contend that he attempted to exercise his right to examine the DHA documents prior to the hearing. We hold that the record on appeal does not support Walker's claim that DHA precluded him from preparing a defense by failing to provide adequate notice of the allegations against him.

¶ 21                                      B. Hearsay

¶ 22        Walker next contends that DHA violated agency rules by relying solely on hearsay evidence to establish his violation of the HCV program rules. He maintains that, despite his

7

objection, the Hearing Officer's decision relied solely on hearsay evidence from Program Manager Sartore. The evidence he cites includes the HUD and DHA documents and the call from Renee at Greenleaf Apartments that triggered the investigation.

¶ 23    Because Renee failed to file an affidavit or testify at the hearing and Sartore lacked any personal knowledge of the information on DHA's documents, Walker claims that DHA impermissibly violated its own administrative rules. Under those rules, DHA "and the family must be given the opportunity to present evidence, and may *question any witnesses*." (Emphasis added.) 24 C.F.R. 982.555(e)(5) (2015). Because he was unable to cross-examine the hearsay evidence from Renee and the agency documents indicating that he resided at Greenleaf Apartments, Walker argues that he was barred from questioning critical witnesses, violating his due process rights. He adds that, "absent the unreliable hearsay evidence, DHA had nothing to support its decision to terminate Mr. Walker's voucher in this case."

¶ 24    DHA is indeed generally required to adhere to its own rules. *Tolliver v. Housing Authority of the County of Cook*, 2017 IL App (1st) 153615, ¶ 33. As Walker acknowledges, however, the administrative rules permit DHA to present evidence "without regard to admissibility under the rules of evidence applicable to judicial proceedings." 24 C.F.R. 982.555(e)(5) (2015). Thus, Sartore's account of the conversation between DHA and Renee was admissible and could be considered by the Hearing Officer. It is also true, however, that DHA may not rely *solely* on inadmissible hearsay to support its allegations. *Stevenson v. Willis*, 579 F. Supp. 2d 913, 919-20 (N.D. Ohio 2008). After reviewing the record, we conclude that the Hearing Officer did not rely solely on such evidence in rendering her decision.

¶ 25    The record shows that DHA first became aware of the double subsidy payments after receiving a call from Renee, who had seen Walker's name on a HUD multiple subsidy list. Based

8

on the lease documents and her interactions with Walker, Renee told DHA that he moved into the Greenleaf apartment on December 1, 2021, and was still residing there. Renee subsequently transmitted HUD Form 50059 to DHA. Attached to that form was the Greenleaf Apartment lease signed by Walker. The lease included the address of the apartment rented by Walker. Based on that information, DHA ran an Enterprise Income Verification (EIV) report that confirmed Walker was leased with both DHA and National Housing for two different subsidized apartments as of December 1. That information, along with the other records presented by DHA, established that Walker signed leases for two subsidized apartments and was receiving subsidy payments for both.

¶ 26        The very nature of business records prepared in the ordinary course of business makes them nontestimonial. *People v. Leach*, 2012 IL 111534, ¶ 78. They are admissible as exceptions to the hearsay rule " 'since their purpose is to aid in the proper transaction of the business and they are useless for that purpose unless accurate.' " *US Bank, National Association v. Avdic*, 2014 IL App (1st) 121759, ¶ 24 (citing *Kimble v. Earle M. Jorgenson Co.,* 358 Ill. App. 3d 400, 414 (2005), quoting Michael H. Graham, Cleary and Graham's Handbook of Illinois Evidence § 803.10, at 817 (7th ed. 1999)). For that reason, "the motive for following a routine of accuracy is great and the motive to falsify nonexistent." *Id.* A witness's lack of personal knowledge of the information on the record affects only its weight, not its admissibility. Ill. S. Ct. R. 236 (eff. Aug. 1, 1992). That is because it is the business record itself, not the supporting testimony, that is admitted as a hearsay exception. *PennyMac Corp. v. Colley*, 2015 IL App (3d) 140964, ¶ 17.

¶ 27        The exception for records maintained by public entities is premised on similar grounds. "Embraced within the rubric of nontestimonial hearsay is the public records exception, records required by statute or authorized to be maintained by the nature of the office, evidencing matters

properly required to be maintained and recorded. *People v. Hester*, 88 Ill. App. 3d 391, 395 (1980). "Like business records, the exception is based on the assumption that public officers will perform their duties, that they lack motive to falsify, and that public inspection to which many such records are subject will disclose inaccuracies. M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 803.12 (8th ed. 2004)." *People v. Leach*, 405 Ill. App. 3d 297, 306 (2010), *aff'd* on other grounds, 2012 IL 111534.

¶ 28    Moreover, the federal courts have expressly rejected claims that contracts such as the Greenleaf lease admitted in this case, qualify as hearsay. *Levy v. McGill*, 137 Fed. Appx. 613, 616 (5th Cir. 2004) (rejecting as "meritless" a claim that an asset purchase agreement was hearsay). " 'Signed instruments such as wills, contracts, and promissory notes are writings that have independent legal significance, and are nonhearsay.' A contract is a verbal act. It has legal reality independent of the truth of any statement contained in it. Under the objective theory of contracts, the fact that two parties signed a contract is enough to create legal rights, whatever the signatories might have been thinking when they signed it. The admission of a contract to prove the operative fact of that contract's existence thus cannot be the subject of a valid hearsay objection." *Kepner-Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 540 (5th Cir. 1994).

¶ 29    Here, the DHA and HUD reports and forms presented at the informal hearing were created in the ordinary course of those public entities' routine operations, not simply for purpose of litigation. In this case, the HUD Form 50059 was undoubtedly one of the most critical documents presented. To receive housing aid, applicants were required to complete and sign that document. The completed copy presented at the hearing established that Walker did just that to receive a subsidy for the Greenleaf apartment. Those documents were undoubtedly created in the regular course of business. Also attached to that form was the Greenleaf lease signed by Walker

10

that identified the leased unit's address and the effective date, pieces of information that proved critical to the Hearing Officer's decision. That contract constituted a verbal act, not hearsay. In the absence of any contrary showing or claim of error or falsification by Walker, we conclude that the documents were properly admitted under either the business or public records exceptions to the hearsay rule or as nonhearsay. *Id.*; *Leach*, 405 Ill. App. 3d at 305–06. Accordingly, their admission did not violate Walker's procedural due process rights. See *Kepner-Tregoe*, 12 F.3d at 540; *Leach*, 2012 IL 111534, ¶ 78.

¶ 30     We conclude that the Hearing Officer did not rely exclusively on hearsay evidence in rendering the decision in this case. Instead, she relied on several forms and documents routinely used by DHA and HUD that were admissible under exceptions to the hearsay rule, as well as on the Greenleaf lease. Moreover, Walker admitted at the hearing to signing that second lease with Greenleaf Apartments and to receiving subsidy payments for both that unit and the Inland Circle apartment. Accordingly, we reject his claim that the Hearing Officer's decision must be reversed because it violated both DHA rules and his constitutional rights by relying on only hearsay evidence.

¶ 31                               C. Mitigating Evidence

¶ 32     Finally, Walker argues that the Hearing Officer improperly failed to consider his mitigating evidence before deciding to terminate his subsidy payments. Because the termination was discretionary, DHA "may consider all relevant circumstances such as the seriousness of the case, the extent of participation or culpability of individual family members, mitigating circumstances related to the disability of a family member, and the effects of denial or termination of assistance on other family members who were not involved in the action or failure." 24 C.F.R. § 982.552(c)(2)(i) (2016). In support, Walker cites *Stewart v. Boone County*

11

*Housing Authority*, 2018 IL App (2d) 180052; *Lipscomb v. Housing Authority of Cook County*, 2015 IL App (1st) 142793; and *Gaston v. CHAC, Inc.*, 375 Ill. App. 3d 16 (2007). The court in each of those cases stated that the hearing officer was required to consider the participant's specific circumstances and provide at least some reason for the final decision. *Stewart*, 2018 IL App (2d) 180052, ¶ 34; *Lipscomb*, 2015 IL App (1st) 142793, ¶ 25, and *Gaston*, 375 Ill. App. 3d at 24.

¶ 33        Here, the Hearing Officer's written decision provided an overview of the hearing as well as the documents introduced by DHA. Based on a review of the evidence adduced at the hearing, the Hearing Officer entered findings of fact that Walker leased an HCV unit subsidized by DHA on November 5, 2021, and subsequently leased in another unit in the Greenleaf Apartments on December 1. His only defense was that he did not live in the Greenleaf apartment, but he failed to "provide any documentation to dispute the HUD documents presented." DHA also proved the subsidy payments made on Walker's behalf for the Inland Circle unit. Based on those findings, The Hearing Officer concluded that DHA had sufficient grounds to immediately terminate Walker's participation in the Housing Choice Voucher program and require him to repay the $6,480.00 in duplicate benefits paid on his behalf.

¶ 34        Although Walker asserts that Hearing Officer did not state any reasons for terminating the subsidy and requiring him to repay DHA, it is apparent from the Hearing Officer's findings that the decision was based on his application for and receipt of duplicate subsidies for two housing units, as alleged by DHA. While Walker now asserts that the Hearing Officer should have expressly considered the hardships that termination of the payments would have on his family, at the hearing the only evidence he offered on the matter was his testimony that he had an 18-year-old son who would be graduating from high school at the end of the month and his

12

repeated assertions that he could not pay the entire sum due at that time. In addition, he offered hypothetical argument about the impact of voucher terminations, but each of those argument addressed factual scenarios that he did not attempt to connect to the facts of this case.

¶ 35    We conclude that the facts in this case are readily distinguishable from those in the cases cited by Walker. In *Stewart*, 2018 IL App (2d) 180052, ¶¶ 36-37, the court noted that the hearing officer's order simply "referenced 'plaintiff's purported basis for failing to reschedule and appear,' " and summarized the evidence. The order lacked "any rationale connecting the recited evidence to the ultimate conclusion." *Id.* ¶ 36. Here, the Hearing Officer's order presented a detailed summary of the proceedings and the evidence adduced before making specific findings of fact based on that evidence that, in turn, supported the ultimate decision to uphold the termination of the subsidy and require reimbursement of the duplicate payments. Unlike in *Stewart*, the order did not fail to connect the evidence with the Hearing Officer's conclusions.

¶ 36    In *Lipscomb*, the record included mitigating evidence that the participant lived in the subsidized residence with minor children, but the hearing officer failed to address that evidence before rendering a decision. Unlike that case, here Walker offered no evidence that he had minor children living with him. He briefly noted only that he resided with a son who was about to graduate from high school. His focus was on his inability to repay the full amount owed to DHA, but that fails to mitigate against the Hearing Officer's initial decision to terminate his voucher payments. Moreover, both Sartore and the Hearing Officer explained to Walker that his repayment did not need to be completed within a specific time period, although his account would be flagged until the balance was paid. Because Walker was not required to repay DHA immediately, his claim that he was unable to repay the full sum at that time does not mitigate the

13

requirement that he reimburse DHA for the sums paid on his behalf due to his retention of multiple subsidized housing units.

¶ 37 Finally, in *Gaston*, the court rejected the hearing officer's decision because it failed to consider the need for a "reasonable accommodation" due to one participant's disabilities and found another participant to be "untruthful" when that finding was contradicted by the evidentiary record. Here, in contrast, Walker did not offer any evidence of disability or any similar situation that would require a reasonable accommodation, and the record fully supports the Hearing Officer's factual findings and conclusions.

¶ 38 Thus, we find that the case law cited by Walker is inapposite. Contrary to Walker's claim, the Hearing Officer's decision and stated rationale was neither arbitrary and capricious nor overly harsh in light of evidence presented at the hearing.

¶ 39 CONCLUSION

¶ 40 For the reasons stated, we affirm the Hearing Officer's decision permitting DHA to terminate Walker's rental subsidy and require repayment of its duplicate payments on his behalf.

¶ 41 Hearing Officer's decision affirmed.

¶ 42 Circuit court judgment affirmed.